## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE REYBOLD GROUP OF COMPANIES, INC., a Delaware Corporation, | |
| Plaintiff, | Civil Action No. 17-cv-810-VAC |
| v. | |
| JOHN DOEs 1-20, | |
| Defendants. | |

### COMPENDIUM OF UNREPORTED DECISIONS

JEFFREY M. WEINER, ESQUIRE #403
1332 King Street
Wilmington, Delaware  19801
(302) 652-0505
Counsel for Plaintiff

DATED:     June 29, 2017

# TABLE OF CONTENTS

**Page**

*Getaway.com LLC v. John Does 1-26*
    [2015 WL 4596413 (D. Del. July 30, 2015)]    1

*Georgia Film Fund Four LLC v. John Does 1-20*,
    Civ. No. 13-487–GMS, D.I. 7 (D. Del. Dec. 20, 2013)    4

*Vision Films, Inc.*,
    [2013 WL 1163988 (D.Del. Mar. 20, 2013)]    5

*Kone Corp. v. ThyssenKrupp USA, Inc.*,
    [2011 WL 4478477 (D. Del. Sept. 26, 2011)]    10

*Wiluna Holdings, LLC v. Does 1-50*,
    [2013 WL 1336792 (E.D. Pa. April 3, 2013)]    17

*Malibu Media LLC v. Doe*,
    [2015 WL 3795948 (M.D. Pa. June 18, 2015)]    20

*Williams v. Ocwen Loan Servicing, LLC*,
    [2015 WL 184024 (D. Del. Jan. 13, 2015)]    23

*Hard Drive Prods., Inc. v. Does 1-30*,
    [2011 WL 2634166 (E.D. Va. July 1, 2011)]    26

*Cell Film v. Does*,
    [2016 WL 7494319 (E. Va. Dec. 30, 2016)]    29

*LHF Prods.v. Doe*,
    [2016 WL 7422657 (E. Va. Dec. 22, 2016)]    35

*Assef v. Does 1–10*,
    [2015 WL 3430241 (N.D. Cal. May 28, 2015)]    41

2015 WL 4596413
Only the Westlaw citation is currently available.
United States District Court,
D. Delaware.

Getaway.com LLC, @MyPlace.com LLC, Insider.com
LLC, and InsuranceBroker.com LLC, Plaintiffs,
v.
John Does 1–26, Defendants.

Civ. No. 15–531–SLR
|
Filed July 30, 2015

**Attorneys and Law Firms**

Daniel Charles Herr, The Norman Law Firm, Dagsboro,
DE, for Plaintiffs.

# MEMORANDUM

Sue L. Robinson, United States District Judge

*1  1.  **Introduction.** On June 24, 2015, plaintiffs
Getaway.com LLC, @MyPlace.com LLC, Insider.com
LLC, and InsuranceBroker.com LLC (collectively,
'plaintiffs') filed this action alleging internet defamation
under Delaware law against twenty-six anonymous online
commenters John Does 1-26. (D.I. 1) On June 25, 2015,
plaintiffs filed an ex parte motion for leave to engage in
pre-service of process discovery to ascertain the identities
of defendants John Does 1-21 (collectively, 'defendants').
(D.I. 4) Specifically, plaintiffs seek to serve a third-
party subpoena on WOT Services, Ltd. ('WOT') in order
to obtain the Internet Protocol ("IP") addresses that
were used to create the allegedly defamatory comments
on www.mywot.com, a website owned by WOT. For
the reasons articulated below, the court has jurisdiction
pursuant to 28 U.S.C. § 1332.

2.  **Background.** Plaintiffs are Delaware limited liability
companies that own several internet domain names and
use these domain names to offer free email services and
subdomain names to the public. (D.I. 1 at ¶¶ 1, 10-11)
Plaintiffs are owned by Phillip Gordon ('Gordon'). (Id.
at ¶ 118) Before or during 2009, individuals unassociated
with plaintiffs or Gordon used plaintiffs' services to create

malicious online spamming and phishing schemes. (Id. at
¶ 1113)

3.  Defendants are individuals who used pseudonymous
screen names to complain of the spamming and phishing
schemes on a website devoted to reviewing internet
domain names. (Id. at ¶¶ 2) Plaintiffs maintain that these
comments falsely attribute the spamming and phishing
schemes to plaintiffs and Gordon. (Id. at ¶¶ 21) Although
the comments date from January 2009, plaintiffs were
first notified of the alleged defamation when Gordon
discovered the comments in July 2013. (D.I. 1 at ¶ 15; D.I.
3)

4.  **Standard of Review.**

a.  **Subject Matter Jurisdiction.** "If the court determines
at any time that it lacks subject matter jurisdiction, the
court must dismiss the action." Fed. R. Civ. P. 12(h)
(3). Federal courts have an obligation to address issues
of subject matter jurisdiction sua sponte. See Zambelli
Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412, 420
(3d Cir. 2010). Because no federal questions are asserted,
jurisdiction is not appropriate under 28 U.S.C. § 1331.
Therefore, the court must discern whether jurisdiction is
proper by reason of the diversity of the parties pursuant to
28 U.S.C. § 1332. In a diversity action, a district court has
subject matter jurisdiction over state law claims, pursuant
to 28 U.S.C. § 1332, if a plaintiff is a citizen from a
state different from each defendant and the amount in
controversy exceeds $75,000. See Werwinski v. Ford Motor
Co., 286 F.3d 661, 666 (3d Cir. 2002). Complete diversity
is required under 28 U.S.C. § 1332. See Braun v. Gonzales,
557 Fed.Appx. 176, 179 (3d Cir. 2014) (unpublished)
(citing Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574,
584 (1999)). This means that each defendant must be a
citizen of a different state from each plaintiff. Owen Equip.
& Erection Co. v. Kroger, 437 U.S. 365, 373 (1978).

*2  b.  **Pre-Service of Process Discovery.** "[B]efore a
defamation plaintiff can obtain the identity of an
anonymous defendant through the compulsory discovery
process he must support his defamation claim with facts
sufficient to defeat a summary judgment motion." Doe
v. Cahill, 884 A.2d 451, 460 (Del. 2005). "[T]o obtain
discovery of an anonymous defendant's identity under the
summary judgment standard, a defamation plaintiff 'must
submit sufficient evidence to establish a prima facie case
for each essential element of the claim in question.' " Id.

at 463 (citing *Colgain v. Oy-Partek Ab (In re Asbestos Litig.)*, 799 A.2d 1151, 1152 (Del. 2002). Finally, "to the extent reasonably practicable under the circumstances, the plaintiff must undertake efforts to notify the anonymous poster that he is the subject of a subpoena or application for order of disclosure." *Id.* at 460.

5. **Discussion.** "Federal courts are divided on the question of whether the existence of unidentified or 'Doe' defendants defeats diversity jurisdiction." *Doe v. Ciolli*, 611 F. Supp. 2d 216, 219 (D. Conn. 2009) (footnote omitted) (holding that anonymous defendants do not destroy complete diversity at the pleading stage); *McMann v. Doe*, 460 F. Supp. 2d 259, 264-65 (D. Mass. 2006) (holding that an anonymous defendant destroyed complete diversity). Under the circumstances of this case, in which the allegedly defamatory comments did not concern a local matter and could have been posted by anyone in the world connected to the internet, the court follows the reasoning in *Ciolli* and declines to question its jurisdiction before plaintiffs have had an opportunity to identify defendants. Should the court discover at a later stage of the litigation that one or more of defendants is a citizen of Delaware and thus not diverse from plaintiffs, the court will review its jurisdiction pursuant to 28 U.S.C. § 1332.

6. The elements of defamation under Delaware law are: "1) the defendant made a defamatory statement; 2) concerning the plaintiff; 3) the statement was published; and 4) a third party would understand the character of the communication as defamatory." *Cahill*, 884 A.2d at 463 (citing *Read v. Carpenter*, 1995 WL 945544, *2, (Del. Super. 1995)). The court can consider context when determining whether the comments are defamatory as a matter of law. *See id. Cahill* emphasized that "[b]logs and chat rooms tend to be vehicles for the expression of opinions; by their very nature, they are not a source of facts or data upon which a reasonable person would rely." *Id.* at 465. The comments at issue here were "representations concerning [the] safety and reliability" of plaintiffs' domain names. (D.I. 1 at ¶ 17) These comments were relied upon to create a rating for plaintiffs' domain

names. (D.I. 1 at ¶ 19) While the ratings express an opinion, the comments themselves function as statements of fact. (*See* D.I. 3) Therefore, the court finds the comments defamatory as a matter of law.

7. The only aspect of the comments alleged to be defamatory are the allegations that plaintiffs and Gordon participated in spamming and phishing scams. Although Gordon is not a plaintiff, a for-profit corporation has a cause of action for defamatory speech related to the corporation's officers if such speech will 'reflect discredit upon the method by which the corporation conducts its business.' Restatement (Second) of Torts § 561 (b). One Delaware court has cited this rule. *See Delaware Exp. Shuttle, Inc. v. Older*, 2002 WL 31458243, at *21 (Del. Ch. Oct. 23, 2002). Accordingly, plaintiffs have satisfied the requirement that the defamatory speech concern the plaintiffs. Plaintiffs satisfy the publication requirement by alleging that defendants' comments are available for any internet user to read. (D.I. 1 at ¶ 18) Finally, the nature of the comments, which question the integrity of plaintiffs' business operations and their principal officer Gordon, could be understood by a third party to be defamatory. Plaintiffs' complaint satisfactorily pleads a prima facie defamation claim.

*3 8. With respect to the notice requirement in *Cahill*, plaintiffs aver that they provided notice 'on the very forum' where the allegedly defamatory comments were found. (D.I. 5) This effort satisfies the notice standard in *Cahill* and plaintiffs' motion is properly before the court. [1]

9. **Conclusion.** Plaintiffs have complied with *Cahill* by providing notice and pleading a prima facie case of defamation sufficient to withstand summary judgment. Plaintiffs' motion to engage in pre-service of process discovery is granted. An order directing and limiting this discovery shall issue.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 4596413

---

Footnotes

1    The court notes that the allegedly defamatory comments were posted on several websites. (D.I. 3) To the extent that plaintiffs' assurance that notice was provided 'on the very forum' where the comments were found implies that notice was provided on only one but not all of the implicated websites, plaintiffs are directed to comply with the notice requirement by posting a similar notice on each affected website before commencing the discovery that the court deems appropriate.

End of Document   © 2017 Thomson Reuters. No claim to original U.S. Government Works.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GEORGIA FILM FUND FOUR, LLC,

              Plaintiff,

                  v.

JOHN DOES 1-20

              Defendant.

Civil Case No. 1:13-cv-00487-UNA

**JURY TRIAL DEMANDED**

## ~~[PROPOSED]~~ ORDER PERMITTING EXPEDITED DISCOVERY

**AND NOW,** upon consideration of Plaintiff's Motion for Leave to Conduct Expedited Discovery and the briefs and declarations submitted in support therewith; and for good cause shown,

**IT IS HEREBY ORDERED** this 20th day of _____ Dec _____, 2013 that Plaintiff's Motion for Leave to Conduct Expedited Discovery is hereby **GRANTED**.

                                _____
                                  United States District Judge

2013 WL 1163988
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.

VISION FILMS, INC., Plaintiff,

v.

JOHN DOES 1–24, Defendants.

Civil Action No. 12–1746–LPS–SRF.

|

March 20, 2013.

## *MEMORANDUM ORDER*

SHERRY R. FALLON, United States Magistrate Judge.

### I. INTRODUCTION

*1  Presently before the court in this copyright infringement action is plaintiff Vision Films, Inc.'s ("Vision Films") ex parte Motion for Leave to Conduct Expedited Discovery (the "Motion") (D.I.5). Vision Films seeks to serve [1] third-party subpoenas on internet service providers ("ISPs") in order obtain the names and addresses of defendants John Does 1–24, which are associated with identified Internet Protocol ("IP") addresses that allegedly were used to illegally copy and distribute Vision Films' copyrighted motion picture. (D.I. 6 at 1, 9)

For the reasons which follow, the court **GRANTS** Vision Films' Motion to conduct expedited discovery with respect to the IP addresses identified in Exhibit A to the Complaint (D.I.1), subject to the protective order outlined in Section V below.

### II. BACKGROUND

Vision Films is a filmmaker and motion picture copyright-holder that is responsible for the production of the commercially released motion picture titled *Blood Money* (the "Motion Picture"). (D.I. 1 at 4) Vision Films asserts the following facts in its Complaint and Opening Brief in Support of the Motion (D.I.6). The court accepts the averments as true for purposes of this motion, without making any findings of fact.

When a motion picture is transformed into an unsecured digital format, it can be copied and distributed an unlimited number of times over the internet. (D.I. 6 at 9; D.I. 7 ¶ 4) To do this, many individuals use online media distribution systems called "peer-to-peer" ("P2P") networks. (*Id.*; D.I. 7 ¶ 5) These P2P systems allow each user who copies a digital file from another user to distribute the file to other users. (*Id.*; D.I. 7 ¶ 6) Vision Films alleges that infringement occurs when an initial file-provider elects to share a file using a P2P network. (*Id.* at 3–4; D.I. 7 ¶ 7) This action of sharing is known as "seeding." (*Id.*; D.I. 7 ¶ 7) Other users ("peers") on the network connect to the seed file to download. (*Id.* at 4; D.I. 7 ¶ 7)

Vision Films engaged Crystal Bay Cooperation ("Crystal Bay") to identify direct infringers of its copyrighted Motion Picture. (D.I. 6 at 3) Using specially designed computer software, Crystal Bay determined that a number of individuals were copying and sharing the Motion Picture using an online media distribution system called BitTorrent. (*Id.* at 4; D.I. 7 ¶ 8)

BitTorrent is computer program that allows peers to join together in a P2P network to upload (distribute) and/or download (copy) files stored on other users' computers. (*Id.* at 3–4; D.I. 7 ¶ 6) BitTorrent employs a protocol to initiate simultaneous connections to hundreds of other users possessing and sharing copies of a file. (*Id.* at 4; D.I. 7 ¶ 10) As additional users request the same file, each new peer becomes part of the network from where the file can be downloaded. (*Id.*; D.I. 7 ¶ 8) Users download the file in pieces. (*Id.*; D.I. 7 ¶ 11) After each piece of the file is downloaded successfully, it is immediately available to others seeking the file. (*Id.*; D.I. 7 ¶ 11) This group of interacting peers is referred to as a "swarm." (*Id.*; D.I. 7 ¶ 14)

*2  Individuals who participate in a swarm expose the IP address they are using when downloading or sharing a file. (*Id.* at 5–6; D.I. 7 ¶ 12, 21) Each of the individual Doe defendants in this action, identified by their IP addresses in Exhibit A to the Complaint, are allegedly peers who participated in the same swarm to reproduce and distribute the Motion Picture. (*Id.* at 4–5; D.I. 7 ¶ 15) Crystal Bay used publicly available databases to trace the identified IP addresses to general geographic areas purportedly within Delaware. [2] (*Id.* at 6; D.I. 7 ¶ 19, 23; D.I. 1, Ex. A)

Shortly after initiating this action against John Does 1-24, identifying them by their IP addresses, Vision Films filed the pending ex parte Motion for expedited discovery seeking access to the names and addresses of the individuals associated with the IP addresses, as found in the ISPs' billing records. (D.I. 6 at 7) Vision Films asserts that ISPs routinely delete the data associated with IP addresses, and therefore, the defendants' identifying information could be lost forever if the Motion is not granted. (Id. at 10)

## III. LEGAL STANDARD

Generally, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)."[3] Fed.R.Civ.P. 26(d)(1). Courts, however, have broad discretion to manage the discovery process, and can expedite or otherwise alter the timing and sequence of discovery. See id. "Federal courts are also specifically authorized, if circumstances warrant, to shorten the time for responses to interrogatories and requests for production of documents, and to permit early depositions." Kone Corp. v. Thyssenkrupp USA, Inc., 2011 WL 4478477, at *3 (D.Del. Sept. 26, 2011) (citing Fed.R.Civ.P. 30(a)(2)(A)(iii); 33(b) (2); & 34(b)(2)(A)).

Unlike other discovery provisions, the Federal Rules of Civil Procedure do not set forth a standard under which courts should consider expedited discovery motions. Similarly, "[t]he Third Circuit does not appear to have adopted a standard for evaluating such requests." Kone Corp., 2011 WL 4478477, at *3. Nevertheless, there are two prevalent standards district courts in this Circuit have applied in deciding motions for expedited discovery.

The first standard, articulated initially by the U.S. District Court for the Southern District of New York in Notaro v. Koch, 95 F.R.D. 403 (S.D.N.Y.1982), "analyzes the expedited discovery request using factors similar to those used for injunctive relief or specific performance."[4] BAE Sys. Aircraft Controls, Inc. v. Eclipse Aviation Corp., 224 F.R.D. 581, 587 (D.Del.2004) (citing Notaro, 95 F.R.D. at 405). See also Kone Corp., 2011 WL 4478477, at *3.

The second, less demanding standard requires the party seeking discovery to show good cause for its motion, such that the request is "reasonable in light of all the circumstances." BAE Sys. Aircraft Controls, 224 F.R.D. at 587. See also Kone Corp., 2011 WL 4478477, at *3

(citing Better Packages, Inc. v. Zheng, 2006 WL 1373055, at *3 (D.N.J. May 17, 2006)).

> *3 Under this "reasonableness" standard, the court must weigh the need for discovery at an early juncture in the litigation against the breadth of the discovery requests and the prejudice to the responding party, by considering such factors as (1) the timing and context of the discovery requests [ ]...; (2) the scope and purpose of the requests; and (3) the nature of the burden to the respondent.

Kone Corp., 2011 WL 4478477, at *4.

In prior decisions involving motions for expedited discovery, this court has utilized only the reasonableness standard. In Commissariat A L'Energie Atomique v. Dell Computer Corp., 2004 WL 406351 (D.Del. Mar. 3, 2004), the court granted the plaintiff's motion for expedited discovery because the plaintiff "show[ed] good cause exist[ed] to allow the discovery," and the discovery sought was "appropriately tailored to the issues raised" in the pending motion. Id. at *3 (citing Philadelphia Newspapers v. Gannett Satellite Info. Network, Inc., 1998 WL 404820, at *2 (E.D.Pa. July 15, 1998)). More recently, in Kone Corp., this court discussed the competing standards applicable to motions for expedited discovery, and recognized that " '[a]n increasing majority of district courts' have rejected the rigid Notaro standard and adopted the more flexible 'good cause'/reasonableness analysis when considering expedited discovery requests." Kone Corp., 2011 WL 4478477, at *4 (quoting St. Louis Grp, Inc. v. Metals & Additives Corp., 275 F.R.D. 236 (S.D.Tex.2011)). The court was "convinced that it should follow the lead of [Dell Computer Corp.] and the majority of other jurisdictions," and therefore, the court applied the reasonableness standard to the plaintiff's motion for expedited discovery. Kone Corp., 2011 WL 4478477, at *4.

The court follows the analysis in Kone Corp. and applies the reasonableness standard to Vision Films' Motion.

## IV. DISCUSSION

The reasonableness standard requires the court to consider " 'the actual circumstances of this case, as well

as ... certain factors such as ... the need for discovery, and the breadth of the moving party's discovery requests.' " *Kone Corp.*, 2011 WL 4478477, at *6 (quoting *BAE Sys. Aircraft Controls*, 224 F.R.D. at 587). The present circumstances favor expedited discovery and satisfy the reasonableness standard. Good cause exists for Vision Films to conduct expedited discovery. In granting Vision Films' Motion, the court finds instructive the reasoning set forth in *Digital Sin, Inc. v. Does 1–176*, 279 F.R.D. 239 (S.D.N.Y.2012), a case involving facts substantially similar to the present matter.

In *Digital Sin*, the plaintiff filed a motion for expedited discovery seeking to subpoena various ISPs in order to identify the individuals associated with IP addresses that allegedly were used to illegally share the plaintiff's copyrighted motion picture. The court found that, under the circumstances, good cause existed for the plaintiff to engage in expedited discovery.

> *4 Here, Plaintiff has alleged a prima facie case of infringement sufficient for purposes of this motion and appears to have no other way of obtaining the identities of the alleged infringers.... [I]n all of the opinions and rulings in similar cases around the country,[5] the Court has found no indication that the plaintiffs have any reasonable alternative ... [other than] subpoenas to obtain the identities of the alleged infringers. Thus, without granting Plaintiff's request, the defendants cannot be identified or served and the litigation cannot proceed. Additionally, expedited discovery is necessary to prevent the requested data from being lost forever as part of routine deletions by the ISPs.

*Digital Sin*, 279 F.R.D. at 241–42.

In the present case, Vision Films asserts a prima facie claim of copyright infringement for purposes of the pending Motion.[6] Vision Films, like the *Digital Sin* plaintiff, has no other way to identify the alleged infringers, apart from serving subpoenas on the ISPs. Accordingly, without granting the pending Motion,

Vision Films can neither identify nor serve the defendants, and this action cannot proceed. Additionally, Vision Films asserts, similar to the plaintiff in *Digital Sin*, that expedited discovery is necessary because evidence identifying the defendants may be destroyed as a result of routine deletion by ISPs. (D.I. 6 at 10) Therefore, the present circumstances favor expedited discovery.

The court, however, finds that the scope of Vision Films' proposed order for expedited discovery does not adequately address the potential for false identification of an alleged infringer. For example, Vision Films seeks the Doe defendants' "true identities," including their "true names and capacities," "subscriber information," "contact information" and "addresses." (D.I. 6 at 7, 9, 10) Therefore, the court will issue a protective order to preserve confidentiality and allow the Doe defendants and ISPs to be heard in this matter before the identifying information is disclosed to Vision Films.[7]

There is nothing in the record to suggest that Vision Films has ulterior motives in seeking the Doe defendants' identities. However, the court notes that a number of district courts have expressed concerns about misidentification of defendants and misuse of information in similar expedited discovery matters. With respect to misidentification, there is a possibility that the names and addresses produced will not match the individuals who actually downloaded the Motion Picture. This can occur where the true infringer uses someone else's computer or wireless network to access the copyrighted material. *See, e.g., Malibu Media, LLC v. Does 1–5*, 2012 WL 2001968, at *1 (S.D.N.Y. June 1, 2012) ("The fact that a copyrighted work was illegally downloaded from a certain IP address does not necessarily mean that the owner of that IP address [is] the infringer." (citation omitted)); *Digital Sin*, 279 F.R.D. at 242 (discussing the risk of false positives).

*5 With respect to misuse of information, some courts have noted that plaintiffs appear simply to be "using the federal courts as an avenue to collect money." *Malibu Media, LLC v. Does 1 through 13*, 2012 WL 4956167, at *2 n. 2 (E.D.Cal. Oct. 12, 2012). *See, e.g., AF Holdings LLC v. Doe*, 2012 WL 6608993, at *1 (E.D.Cal. Dec. 17, 2012); *Malibu Media, LLC v. Does 1–5*, 2012 WL 2001968, at *2; *Hard Drive Prods. v. Does 1–90*, 2012 WL 1094653, at *7 (N.D.Cal. Mar. 30, 2012) (explaining that "the court will not assist a plaintiff who seems to have no desire to

actually litigate but instead seems to be using the courts to pursue an extrajudicial business plan against possible infringers"); *Digital Sin*, 279 F .R.D. at 242 (discussing coerced, unjust settlements). The court finds it prudent to incorporate some protections, for a limited duration, to avoid unintended consequences of the disclosure of confidential information as to the John Doe defendants. Consequently, the court has outlined the scope of the permissible expedited discovery in Section V.

## V. CONCLUSION

The Order is adapted from one issued by United States District Judge Nathan in *Digital Sin*.

IT IS HEREBY ORDERED that Vision Films may immediately serve a Rule 45 subpoena on the ISPs listed in Exhibit A to the Complaint to obtain information to identify Does 1–24, specifically, his or her name and address. The subpoena shall have a copy of this Order attached.

IT IS FURTHER ORDERED that the ISPs will have **60 days** from the date of service of the Rule 45 subpoena upon them to serve Does 1–24 with a copy of the subpoena and a copy of this Order. The ISPs may serve Does 1–24 using any reasonable means, including written notice sent to his or her last known address, transmitted either by first-class mail or via overnight service.

IT IS FURTHER ORDERED that Does 1–24 shall have **60 days** from the date of service of the Rule 45 subpoena and this Order upon him or her to file any motions with this court contesting the subpoena (including a motion to quash or modify the subpoena). The ISPs may not turn over the Doe defendants' identifying information to Vision Films before the expiration of this 60-day period. Additionally, if a defendant or ISP files a motion to quash the subpoena, the ISPs may not turn over any information

to Vision Films until the issues have been addressed and the court issues an order instructing the ISPs to resume production of the requested discovery.

IT IS FURTHER ORDERED that if the 60-day period lapses without a Doe defendant or ISP contesting the subpoena, the ISPs shall have **10 days** to produce the information responsive to the subpoena to Vision Films. A Doe defendant or ISP who moves to quash or modify the subpoena, shall at the same time as his or her filing also notify all ISPs so that the ISPs are on notice not to release any of the Doe defendants' contact information to Vision Films until the court rules on any such motions.

*6 IT IS FURTHER ORDERED that the subpoenaed entity shall preserve any subpoenaed information pending the resolution of any timely-filed motion to quash.

IT IS FURTHER ORDERED that an ISP that receives a subpoena pursuant to this Order shall confer with Vision Films and shall not assess any charge in advance of providing the information requested in the subpoena. An ISP that receives a subpoena and elects to charge for the costs of production shall provide a billing summary and cost report to Vision Films.

IT IS FURTHER ORDERED that Vision Films shall serve a copy of this Order along with any subpoenas issued pursuant to this Order to the listed ISPs.

IT IS FURTHER ORDERED that any information ultimately disclosed to Vision Films in response to a Rule 45 subpoena may be used by Vision Films solely for the purpose of protecting its rights as set forth in the Complaint.

## All Citations

Not Reported in F.Supp.2d, 2013 WL 1163988

---

Footnotes

1    Vision Films' Motion seeks "leave to conduct expedited discovery" (D.I.5), but does not specifically propose the form of such discovery. Based upon the court's analysis of decisions related to the subject matter of the pending request, the court assumes that Vision Films anticipates issuing third party subpoenas directed to ISPs requesting information identifying the twenty four John Doe defendants.

2    "In situations where a plaintiff files suit against then unnamed defendants ... courts have accepted IP addresses as establishing a prima facie case of personal jurisdiction." *Malibu Media, LLC v. John Does 1–15*, 2012 WL 3089383, at *10 (E .D.Pa. July 30, 2012) (citations omitted). Vision Films' factual assertion as to the location of the defendants at the time

of the alleged infringement establishes personal jurisdiction for purposes of the pending Motion. Should the ISPs or any John Doe defendants make a showing contrary to this assertion, the court will reexamine the issue of personal jurisdiction.

3   Rule 26(f) of the Federal Rules of Civil Procedure provides that "the parties must confer as soon as practicable—and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b)." Fed.R.Civ.P. 26(f)(1). Parties need not await the scheduling of a Rule 16 conference before holding a Rule 26(f) conference.

4   Under the *Notaro* standard, the moving party must demonstrate:

> (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.
> *Notaro,* 95 F.R.D. at 405.

5   *See Digital Sin,* 279 F.R.D. at 240 n. 2.

6   "To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991) (citing *Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 548 (1985)). Here, Vision Films satisfies both elements. First, Vision Films attached to the Complaint a Certificate of Registration evidencing that a valid copyright exists for the Motion Picture. (D.I.1, Ex. B) In addition, Vision Films asserts that the defendants, through the use of BitTorrent, illegally downloaded and shared the Motion Picture. (D.I. 6 at 1, 9) Therefore, the court finds that Vision Films has adequately set forth a prima facie claim of copyright infringement. *See Malibu Media, LLC v. John Does 1–15,* 2012 WL 3089383, at*7.

7   "District courts may for good cause issue a protective order to spare parties 'annoyance, embarrassment, oppression, or undue burden.' " *Digital Sin,* 279 F.R.D. at 242 (quoting Fed.R.Civ.P. 26(c)(1)).

---

End of Document                                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Distinguished by Capriola Corp., M.D.Fla., November 1, 2012

2011 WL 4478477
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.

Kone CORPORATION, Plaintiff,

v.

THYSSENKRUPP USA, INC., Thyssenkrupp
Elevator Americas Corporation, Thyssenkrupp
Elevator, Corporation, Thyssenkrupp Elevator
Capital Corporation, and Thyssenkrupp Elevator
Manufacturing Corporation, Defendants.

Civ. Action No. 11–465–LPS–CJB.

|

Sept. 26, 2011.

**Attorneys and Law Firms**

Sean T. O'Kelly, O'Kelly & Ernst, LLC, Wilmington,
DE, Michael B. Marion, Michael K. Mutter, Quentin R.
Corrie, for Plaintiff.

James Michael Lennon, Womble Carlyle Sandridge &
Rice, PLLC, Wilmington, DE, for Defendants.

*MEMORANDUM ORDER*

CHRISTOPHER J. BURKE, United States Magistrate
Judge.

*1  On September 2, 2011, Plaintiff Kone Corporation
moved for leave to take expedited discovery in connection
with its pending motion for a preliminary injunction. At
a teleconference held on September 13, 2011, this Court
ordered the parties to meet and confer regarding the scope
and timing of Plaintiff's expedited discovery requests. The
parties were unable to reach agreement on this issue.
Pursuant to the Court's Order regarding Resolution of
Discovery Matters, the parties submitted letter briefs
outlining their respective positions, and presented oral
argument at a teleconference on September 23, 2011.
Having considered all of the parties' written submissions
and oral arguments, and for the reasons that follow, this
Court GRANTS–IN–PART Plaintiff's motion, with the
scope and timing of expedited discovery to be limited as
outlined below.

**I. BACKGROUND**

**A. Procedural Posture**
Plaintiff brought the present action on May 25, 2011,
alleging infringement of U.S. Patent No. 6,685,002 ("the
#002 patent"). (D.I.1) On June 20, 2011, Plaintiff filed
an amended complaint, again asserting infringement of
the # 002 patent, and adding a count of false advertising
under the Lanham Act. (D.I.6) On that same date,
Plaintiff moved for a preliminary injunction ("Plaintiff's
P.I. motion") barring Defendants from "infringing
[the #002 patent] during the pendency of the present
litigation." (D.I. 7 at 1) Although Plaintiff's P.I. motion
was fully briefed on August 11, 2011 (D.I.8, 25, 33), the
parties later jointly agreed that Defendants could submit
a sur-reply brief regarding that motion (D.I.39), and
that Plaintiff could later submit an additional responsive
brief (which has not yet been filed). (D.I.38) Although
Defendants have each answered Plaintiff's Amended
Complaint (D.I.27–31), the parties have yet to meet and
confer pursuant to Fed.R.Civ.P. 26(f). [1]

**B. The Parties' Arguments & Evidence Regarding
Infringement**
Plaintiff is an international engineering and service
company specializing in the manufacturing, service, and
modernization of elevators and escalators. (D.I. 6 at
¶ 19) Plaintiff is the sole owner by assignment of the
#002 patent, which is directed to methods of escalator
modernization, as well as to modernized escalator systems
and kits associated therewith. The #002 patent teaches
that an escalator can be modernized by retaining the
trass framework from an existing escalator, [2] and then
installing three types of modulesan upper module, a lower
module, and a "plurality of incline modules" along the
diagonal length of the existing truss structure. (#002
patent, col. 5:42) Each of the claims of the #002 patent
includes a limitation requiring that a horizontal portion or
element of those incline modules be attached or connected
to a cross member of the retained trass framework. [3] The
parties' briefs and other submissions in connection with
Plaintiff's P.I. motion focus largely on whether the accused
product satisfies this limitation.

*2  Plaintiff alleges that Defendants' I.MOD Escalator
Modernization System infringes the #002 patent. [4] The

first U.S. LMOD product was sold to Phoenix Sky Harbor Airport in 2011, but has not yet been installed. (D.I. 25 at 10) Relying largely on declarations from their employees, Defendants assert that there are two versions of the incline module that might be used in an LMOD system. The first version includes an H-shaped support member that Defendants claim is "intended to be used where a cross member has been completely removed from the existing truss structure." (*Id.* at 8) The second version includes a set of two vertical members that are attached to the sides of the escalator truss structure, but that have no permanent horizontal feature that connects the two vertical members to each other. (*Id.* at 9) Defendants argue that neither version of their LMOD system includes a step of "attaching" or "connecting" a horizontal portion of an incline module to an existing truss cross member, as required by the #002 patent. (*Id.* at 1)

For its part, Plaintiff appears to have been unaware, prior to the filing of its Amended Complaint, that two versions of the LMOD system apparently exist. In its filings regarding the P.I. motion, Plaintiff has thus far relied primarily on two items as evidence of the alleged infringement: (i) a video presentation about the LMOD system on Defendant ThyssenKrupp Elevator Americas' Facebook page; and (ii) an undated, untitled, eight-page ThyssenKrupp PowerPoint presentation describing a modular escalator modernization system. (D.I. 8, exs. G & H) At various points in its filings, Plaintiff argues that these two sources demonstrate that Defendants' LMOD system is installed so that its incline modules are attached or connected to a cross member of the retained truss framework. For their part, Defendants dispute Plaintiff's assertions and argue that Plaintiff's allegations amount to unfounded speculation, based on a misunderstanding of how the LMOD system is actually installed.

### C. Plaintiff's Motion for Expedited Discovery

On September 2, 2011, roughly ten weeks after first moving for a preliminary injunction, Plaintiff filed a motion seeking, *inter alia,* (1) leave to serve Defendants with not more than 10 interrogatories and not more than 10 document requests; (2) a shortened, 14-day deadline for Defendants to respond to those requests; and (3) leave to take not more than 2 depositions. (D.I.42) Although Plaintiff specified these three different discovery mechanisms in its motion, and stated that the discovery sought would be generally limited to a single, disputed step relating to the installation of incline modules (D.I.

43 at 10), Plaintiff did not provide any actual discovery requests to this Court, and failed to identify the individual witness(es) it sought to depose. Plaintiff asserted that "the need for discovery is founded on [Defendants'] constant shifting of its manner of installation and non-infringement position," and that discovery was needed in order to adduce evidence that would be important to the issues addressed at the preliminary injunction hearing. (D.I. 43 at 1–2, 9) On September 8, 2011, Defendants submitted a brief in opposition to Plaintiff's request, disputing Plaintiff's characterization of its position as "shifting," arguing Plaintiff failed to justify the need for expedited discovery, and requesting that any discovery be limited to ascertaining the methods of constructing and installing Defendants' accused LMOD product. (D.I.44)

**\*3** At a teleconference on September 13, 2011, this Court noted that it was impossible for either Defendants or for the Court to assess Plaintiff's request for expedited discovery without knowing the scope of the actual discovery sought. (D.I.46) As a result, Plaintiff was ordered to serve its proposed expedited discovery requests on Defendants by no later than September 14, 2011, and the parties were ordered to meet and confer by September 16, 2011, in an attempt to reach agreement on the scope and timing of any pre-hearing discovery.

Having failed to reach agreement, the parties submitted letter briefs and exhibits to the Court regarding their respective positions. (D.I.48, 49) Included among these submissions were Plaintiff's proposed requests for production, interrogatories, and a 30(b)(6) deposition notice. The parties discussed these submissions at a teleconference held on September 23, 2011.

### II. STANDARD OF REVIEW

Generally, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." [5] Fed.R.Civ.P. 26(d)(1). However, courts have broad discretion to manage the discovery process, and can accelerate or otherwise alter the timing and sequence of discovery. *See id.; see also* Fed.R.Civ.P. 26(d) advisory committee notes (1993) ("Discovery can begin earlier if authorized ... by local rule, order, or stipulation. This will be appropriate in some cases, such as those involving requests for a preliminary injunction ....") Federal courts are also specifically authorized, if circumstances warrant, to shorten the

time for responses to interrogatories and requests for production of documents, and to permit early depositions. Fed.R.Civ.P. 30(a)(2)(A)(iii); 33(b)(2); & 34(b)(2)(A).

The Federal Rules of Civil Procedure offer little guidance as to when it is appropriate to authorize expedited and/or early discovery. The Third Circuit does not appear to have adopted a standard for evaluating such requests, and district courts in this circuit have applied two different standards when considering motions for expedited discovery. The first standard, which was initially articulated by the U.S. District Court for the Southern District of New York, analyzes an expedited discovery request using factors similar to those used in reviewing a request for injunctive relief or specific performance. *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y.1982); *Gucci Am., Inc. v. Daffy's Inc.*, No. Civ.A. 004463, 2000 WL 1720738, at *5–6 (D.N.J. Nov.14, 2000) (applying the *Notaro* standard). Under the *Notaro* standard, the moving party must demonstrate:

> (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.

*4 *Notaro*, 95 F.R.D. at 405.

The second, less stringent standard requires the party seeking discovery to show "good cause" for its motion, such that the request is "reasonable" in light of the relevant circumstances. *See, e.g., Better Packages, Inc. v. Zheng*, No. Civ.A 05–4477(SRC), 2006 WL 1373055, at *3 (D.N.J. May 17, 2006). Under this "reasonableness" standard, the court must weigh the need for discovery at an early juncture in the litigation against the breadth of the discovery requests and the prejudice to the responding party, by considering such factors as (1) the timing and context of the discovery requests, including whether a preliminary injunction hearing has been scheduled; (2) the scope and purpose of the requests; and (3) the nature of the burden to the respondent. *See id.* (internal citations omitted). "An increasing majority of district courts" have rejected the rigid *Notaro* standard and adopted the

more flexible "good cause"/reasonableness analysis when considering expedited discovery requests. *St. Louis Group, Inc. v. Metals & Additives Corp.*, Civil Action No. L–11–22, 2011 WL 1833460, at *2 (S.D.Tex. Apr.26, 2011).

## III. DISCUSSION

### A. Applicable Standard of Review

Given the absence of clear guidance from either the Federal Rules of Civil Procedure or from the Third Circuit, this Court must first determine whether to apply the *Notaro* standard or the reasonableness standard to Plaintiff's request.

Although, as noted above, at least one district court in the Third Circuit has applied the *Notaro* standard to an expedited discovery motion, the District of Delaware appears never to have utilized that standard. For instance, in *BAE Sys. Aircraft Controls Inc. v. Eclipse Aviation Corp.*, 224 F.R.D. 581, 587–88 (D.Del.2004) (hereinafter "*BAE*"), the plaintiff sought leave to take five depositions and to compel production of eleven documents on an expedited basis. While in *BAE*, the Court acknowledged and discussed both the *Notaro* and reasonableness standards, it ultimately determined that there was "no need to select the appropriate standard to be applied to a request for expedited discovery" because the Court concluded that the case should be stayed pending arbitration. *Id. BAE* therefore left unresolved the issue of what standard generally applies to expedited discovery motions.

There appears to be only one other written decision from this District that touches on the appropriate standard to apply when considering a motion for expedited discovery. In *Commissariat A L'Energie Atomique v. Dell Computer Corp.*, No. Civ.A. 03–484–KAJ, 2004 WL 406351 (D.Del. Mar.3, 2004) (hereinafter "*Dell*" ), a patent infringement case, the plaintiff filed a motion for limited, expedited discovery before filing its reply brief in support of a motion for a preliminary injunction. *Id.* at *1. The *Dell* plaintiff argued that the defendant failed to provide certain information relating to disputed claim constructions, and therefore sought expedited treatment of three interrogatories and eight document requests. *Id.* In granting the motion, the Court noted that the requests appeared to be appropriately tailored to the issues relating to the pending motion, and that the plaintiff "ha[d] shown *good cause* exists to allow the discovery." *Id.* (emphasis

added) (citing *Philadelphia Newspapers v. Gannett Satellite Info. Network, Inc.*, No. CIV. A. 98- CV-2782, 1998 WL 404820, at *2 (E.D.Pa. July 15, 1998)). Although the *Dell* Court thus appears to have employed the reasonableness standard, it did so without a discussion of the competing *Notaro* standard.

*5   This Court is convinced that it should follow the lead of the *Dell* Court and the majority of other jurisdictions, and apply the reasonableness standard to Plaintiff's motion for expedited discovery. In so doing, the Court notes that *Notaro* and *Gucci*, which applied a standard different from that which the Court adopts today, involved unique sets of facts that are inapplicable to the present application for discovery. *See generally OMG Fidelity, Inc. v. Sirius Techs., Inc.*, 239 F.R.D. 300, 303–04 (N.D.N.Y.2006) (stating that although *Notaro* was a "succinct, well-reasoned decision," it addressed a "very specific situation" that preceded the sweeping changes to the Federal Rules of Civil Procedure enacted in 2000).

In *Notaro*, the plaintiffs alleged that Edward Koch, who was at that time the mayor of New York City, violated their constitutional rights of freedom of speech and expression, and sought leave to depose Mayor Koch within thirty days of the commencement of the action. 95 F.R.D. at 404. The plaintiffs alleged, based on newspaper reports, that Mayor Koch, who was running for Governor of New York, had compiled lists of members of the Liberal Party employed by the State of New York, and intended to fire them if elected governor. *Id.* The Southern District of New York found that a preliminary-injunction-style analysis of this request was necessary because of the extraordinarily quick timing of the request, which presented the possibility that the defendant might "unwarily incriminat[e] [himself] before [he had] a chance to review the facts of the case and to retain counsel." *Id.* at 405. The *Notaro* Court's decision was also affected by the atypical purpose behind the deposition, which it found would be tantamount to an "inquisition of counsel for an opposition political party without sufficient advance notice, [where] the possibility of an incidental embarrassment is great." *Id.* at 406.

Although the *Gucci* Court did not face the delicate set of political factors at issue in *Notaro*, the facts in *Gucci* were similarly unique. In *Gucci*, the Court was clearly concerned that the request for discovery was the product of a type of sham litigation, designed not to shine light on the merits of the allegations contained in the complaint, but instead to permit the plaintiffs to learn the identity of third-party distributors who were selling certain handbags. 2000 WL 1720738, at *6–7. Ultimately, after employing the *Notaro* test, the *Gucci* Court denied the plaintiff's motion for expedited discovery. *Id.* at *11.

Unlike the unique circumstances in *Notaro* and *Gucci*, here Plaintiff is seeking discovery that directly relates to products and methods accused of patent infringement, in a suit between sophisticated corporate parties, more than three months after the filing of the Amended Complaint, and after all Defendants had the opportunity to answer that Complaint. Thus, in contrast to the situation in *Notaro*, here Defendants have had ample time to fully review the allegations against them before addressing the discovery request. *See, e.g., Zheng*, 2006 WL 1373055 at *4 (noting that where defendants had ample time to review the facts of the complaint and sufficient information about plaintiff's allegations, the *Notaro* standard was not warranted). And, at least on the facts currently before it, this Court discerns no ulterior motive to this litigation analogous to the special circumstances encountered in *Notaro* or *Gucci*, and which might justify heightened scrutiny. *See, e.g., Entm't Tech. Corp. v. Walt Disney Imagineering*, No. Civ.A. 03–3546, 2003 WL 22519440, at *4 (E.D.Pa. Oct.2, 2003) (noting that the lack of "Gucci-like circumstances indicat[ing] that Plaintiff ... is using the litigation as a shell game" weighed against using the *Notaro* standard). [6]

*6   Moreover, Plaintiff's request also arises in the context of a pending preliminary injunction motion. [7] In order to carry its burden on the P.I. motion, Plaintiff must demonstrate, *inter alia*, that it will "likely prove" that Defendants infringe the #002 patent. [8] Under a *Notaro*-style analysis, a movant would have to paradoxically demonstrate a "probability of success" on the merits of infringement to justify discovery—discovery that is presumably needed in order to help make a showing of the same type of "likelihood of success" at a later preliminary injunction hearing. For this reason, a number of courts have recognized that the *Notaro* analysis is circular and ineffective when the request relates to an underlying preliminary injunction motion. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 624 (N.D.Ill.2000) (applying a reasonableness standard and noting that when "a plaintiff seeks expedited

discovery in order to prepare for a preliminary injunction hearing, it does not make sense to use preliminary injunction analysis factors to determine the propriety" of the request); *see also Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275 (N.D.Cal.2002) (noting that it makes "little sense" to employ the *Notaro* analysis when the request is for the purpose of preparing for a preliminary injunction hearing).[9]

Accordingly, the Court will consider whether Plaintiff's expedited discovery motion satisfies the "reasonableness" test.

## B. Assessment of Requests Under "Good Cause"/ Reasonableness Standard

As discussed above, the reasonableness standard requires the court to assess "the actual circumstances of [this] case, as well as [to consider] certain factors such as a pending preliminary injunction hearing, the need for discovery, and the breadth of the moving party's discovery requests." *BAE*, 224 F.R.D. at 587. After considering these factors, the Court finds that expedited discovery should proceed, albeit on a much more limited basis than Plaintiff has requested.

The circumstances of this case, including its procedural posture, weigh in favor of granting expedited discovery, particularly insofar as that discovery directly relates to disputed facts at issue regarding Plaintiff's P.I. motion. Plaintiff's Amended Complaint was served roughly three months ago, and the P.I. motion has been pending for the same duration. (D.I.6, 7) Indeed, each of Defendants filed an Answer more than six weeks ago, such that, absent the pending preliminary injunction motion, the Court would already have scheduled a Rule 16 teleconference and the parties would otherwise have commenced the discovery process. *See, e.g., Entm't Tech. Corp.*, 2003 WL 22519440 at *5 (noting that "[w]eighing in favor of Plaintiff's motion is the fact that the discovery request has not been made too far in advance of the start of formal discovery"). Granting limited expedited discovery at this stage would therefore not force Defendants to provide access to their documents or witnesses before they have had a fair opportunity to assess the issues in dispute, or to catalogue the relative strengths and weaknesses of their case. Any prejudice that might result from "early" discovery is muted in a case, like this one, where the very "early" stage of this litigation has passed.

*7 Moreover, the case is likely to be streamlined and proceed more efficiently if targeted, expedited discovery proceeds at this juncture.[10] Regardless of the outcome of Plaintiff's preliminary injunction motion, Plaintiff will presumably soon be seeking documentary and testimonial evidence relating to the accused products, just as it has done with its expedited requests. Discovery at this phase is therefore likely not only to crystallize the issues for the preliminary injunction hearing, but also will not be wasteful, because much of the information at issue would likely have been turned over anyway by Defendants soon after a Rule 16 conference.

In addition, courts have regularly noted that expedited discovery is more likely to be an efficient use of the parties' resources when it relates to a pending preliminary injunction hearing, where it can help to ensure a clear and focused factual record. *EXL Labs., LLC v. Egolf*, Civil Action No. 10–6282, 2010 WL 5000835, at *8 (E.D.Pa. Dec.7, 2010) (granting expedited discovery where a preliminary injunction hearing was pending); *Philadelphia Newspapers, Inc.*, 1998 WL 404820 at *4 (noting that " 'expedited discovery is particularly appropriate' " where that discovery would " 'better enable the court to judge the parties' interests and respective chances for success on the merits' at a preliminary injunction hearing") (citations omitted). While no preliminary injunction hearing had been scheduled when Plaintiff's motion was filed, the Court intends to proceed with such a hearing promptly, as noted below.

Regarding the need for expedited discovery, the Court finds that Plaintiff has shown a need for discovery relating to certain, circumscribed subject-matter that may illuminate issues at play at the preliminary injunction hearing. The parties dispute the manner in which the I.MOD is installed,[11] which in turn is important to resolving whether Plaintiff has met its burden of showing a reasonable "likelihood of success" on the merits of its infringement case. *Amazon.com, Inc.*, 239 F.3d at 1350. While this expedited discovery may involve the disclosure of Defendants' confidential business and/or trade secret information, any concerns regarding confidentiality can be adequately addressed with a Protective Order.

However, after examining the breadth of Plaintiff's discovery requests, it is clear that those requests are not narrowly tailored. Plaintiff previously represented that

"[t]he points of contention concerning infringement by the I.MOD system have been well fleshed-out by the parties, and the discovery *will be directed to the incline modules ... [and] information concerning just one of [the] five [installation] steps"* found in the #002 patent." (D.I. 43 at 10 (emphasis added)) However, when Plaintiff actually submitted those proposed requests, they were not so limited. Instead, they included some interrogatories and requests for production of documents that appear to more directly relate to general allegations regarding willful infringement, factors regarding irreparable harm, design and manufacturing activities outside the U.S., products not currently accused of infringement,[12] and issues not addressed in the parties' preliminary injunction papers. (D.I. 48, exs. 1–3; D.I. 50) While Plaintiff may ultimately be entitled to much of the discovery it seeks later in this case, an expedited discovery motion is not the proper vehicle for obtaining such broad-ranging discovery. Instead, such a motion should be focused on only those "narrow categories of documents [and information that] will substantially contribute to moving this case forward." *Semitool, Inc.,* 208 F.R.D. at 277. In this case, such categories must focus on addressing the key disputed factual issue relevant to the P.I. motion hearing —namely, how the incline modules in Defendant's I.MOD system are installed.

**\*8** When a movant overreaches with its requests for expedited discovery, courts have sometimes denied the requests in their entirety. *See, e.g., Zheng,* 2006 WL 1373055 at \*5 (denying a motion for expedited discovery and noting that granting the requests "would lead to the parties conducting nearly all discovery in an expedited fashion under the premise of preparing for a preliminary injunction hearing, which is not the purpose of expedited discovery"); *Philadelphia Newspapers, Inc.,* 1998 WL 404820 at \*3 (denying a motion for expedited discovery where the movant failed to include "reasonable boundaries"). However, the Court finds that, particularly in light of the fact that such discovery may help to clarify and elucidate issues relating to the installation of incline modules that will be presented to the Court at the upcoming P.I. motion hearing, limited discovery is appropriate at this stage.

Thus, the Court finds that good cause exists to depart from the ordinary discovery process to allow Plaintiff to pursue discovery on that topic only. To that end, the Court has outlined the parameters of the permissible expedited discovery below. *See, e.g., Semitool, Inc.,* 208 F.R.D. at 277-78 (granting-in-part a motion for expedited discovery, and outlining specific topics for such discovery). Given the narrow focus of this discovery and the current procedural posture, the accelerated time line should pose a minimal burden to Defendants.

**IV. CONCLUSION**

For the reasons outlined above, it is hereby ORDERED that Plaintiff's motion for expedited discovery (D.I.42) is GRANTED–IN–PART. By no later than **October 11, 2011,** Defendants shall provide to Plaintiff the following:

(1) Installation instructions, product manuals, and any other documents relating to the installation or proposed installation in the United States of the incline modules in Defendants' I.MOD system; and

(2) Any marketing brochures, PowerPoint presentations, videos, or other documents relating to promotion or offers for sale of Defendants' I.MOD system that have been given, distributed, or otherwise publicly disseminated in the United States.

By no later than **October 18, 2011,** Defendants shall make a witness available for a 30(b)(6) deposition regarding (1) any documents produced by Defendants pursuant to this Order; and (2) any factual allegations set forth in the declarations of Richard A. Glanzman (D.I. 26, A165–174; D.I. 39, ex. 2) relating to the installation or proposed installation in the United States of the incline modules in Defendants' I.MOD system.

Plaintiff shall file any sur-sur-reply brief in further support of its P.I. motion no later than **October 25, 2011.** Defendants shall file any further written response to that sur-sur-reply by no later than **November 1, 2011.** The Court will hold a hearing on Plaintiff's motion for a preliminary injunction beginning at **10:00 a.m.** on **November 4, 2011.** To the extent that a party plans to put forward witness testimony at that hearing, the party shall inform the Court by letter submitted no later than **November 1, 2011,** listing the name(s) and title(s) of the proposed witness(es).

**\*9** The parties shall submit a proposed form of a Protective Order by no later than **September 28, 2011.** The parties shall also meet and confer promptly regarding a scheduling order pursuant to Fed.R.Civ.P. 26(f), and

submit a proposed scheduling order, which also reflects the above dates, by no later than **October 7, 2011.**

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 4478477

Footnotes

1    The Court has not yet scheduled a Rule 16 conference and no scheduling order has been entered. On August 31, 2011, Defendants proposed that the parties conduct a Rule 26(f) conference. (D.I. 44, ex. 1 at ¶ 5) Plaintiff apparently rejected this suggestion. *Id.*

2    The "truss" of an escalator is its structural framework, which is usually constructed of metal, and which extends the entire length of the escalator. (#002 patent, col. 2:43–58; FIG. 1) A "cross member" is a metal bar that extends across from one side of an escalator to another, linking the two sides of the truss. (*Id.* at col. 2:59–3:3)

3    For instance, claim 1 of the #002 patent recites a step of installing a plurality of incline modules by "placing each incline module just inside [the] truss framework and attaching a horizontal portion of each incline module to one of [the] cross members." (#002 patent, col. 5:4247)

4    As noted above, the #002 patent is directly principally to *methods* of modernizing an escalator system, so the process of installing an I.MOD system is also accused of infringement.

5    Rule 26(f) of the Federal Rules of Civil Procedure provides that "the parties must confer as soon as practicable—and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b)." Fed.R.Civ.P. 26(f)(1). Parties need not await the scheduling of a Rule 16 conference before holding a Rule 26(f) conference.

6    In any event, the concerns raised in *Notaro* and *Gucci*—such as the timing, scope, and potential for abuse relating to the discovery requests—can be subsumed within the overall analysis of whether Plaintiff has shown good cause for its requests.

7    No preliminary injunction motion was pending in *Notaro* or *Gucci.*

8    Courts consider four factors when determining whether to grant a preliminary injunction motion: "(1) a reasonable likelihood of success on the merits; (2) irreparable harm if an injunction is not granted; (3) a balance of hardships tipping in [the movant's] favor; and (4) the injunction's favorable impact on the public interest." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.,* 239 F.3d 1343, 1350 (Fed.Cir.2001).

9    Further supporting this Court's decision is the fact that both parties agree that the "good cause"/reasonableness standard should govern Plaintiff's motion for expedited discovery. (D.I. 43 at 8; D .I. 44 at 1–2)

10   Indeed, Plaintiff's counsel previously indicated that "if, after discovery on the I.MOD, the discovery reveals that the [*sic* ] TK's representations accurately reflect the I.MOD product, not pursuing the preliminary injunction would be given serious consideration." (D.I.49, ex. 3)

11   The Court does not share Plaintiff's view that Defendants' statements regarding how their products are installed have "shift[ed]." (D.I. 43 at 2) However, what is clear is that the parties dispute the actual contours of the accused product and the methods of installing that product. Expedited discovery will likely aid the Court in addressing that issue in the context of Plaintiff's P.I.. motion.

12   The Court therefore rejects the definition of "Accused Device" proposed by Plaintiff (D.I.48), and will limit expedited discovery to Defendants' I.MOD systems that have been made, used, sold, or offered for sale in the U.S., or imported into the U.S., in accordance with 35 U.S.C. § 271.

---

End of Document                                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 1336792
Only the Westlaw citation is currently available.
United States District Court,
E.D. Pennsylvania.

WILUNA HOLDINGS, LLC, Plaintiff,

v.

DOES 1–50, Defendants.

Civil Action No. 13–1143.

|

April 3, 2013.

## Attorneys and Law Firms

John J. O'Malley, Volpe & Koenig PC, Philadelphia, PA, for Plaintiff.

## *MEMORANDUM*

PRATTER, District Judge.

**\*1** Plaintiff Wiluna Holdings, LLC sells pornographic videos. Wiluna alleges that it operates the websites www.clips4sale.com and www.c4s.com, and that it markets videos under the trademarks clips4sale, clips4sale.com, c4s, and c4s.com. Wiluna further alleges that John Doe Defendants have infringed on its trademarks by sending emails from the address saraclips4sale@gmail.com which suggest that the sender of the emails is affiliated with, or approved by, Wiluna. For obvious reasons, no defendants have yet been served with the complaint. By its present motion, Wiluna seeks an order permitting expedited discovery for the purpose of identifying John Doe Defendants. For the reasons that follow, the Court grants the motion.

## I. Background

Wiluna filed its complaint on March 5, 2013, and filed its motion for expedited discovery 15 days later. In its motion, Wiluna seeks permission to serve a single Rule 45 subpoena on Google, Inc. so that Wiluna may identify the account holder of the saraclips4sale@gmail.com email address. Wiluna asserts that "[w]ithout this information, [it] cannot pursue its lawsuit to protect it [s] trademarks." *See* Docket No. 4–1 at 1–2. In support of this assertion, Wiluna states that there is no identifying information

within the email messages it has obtained, and that Google will not voluntarily provide to Wiluna such information. *See id.* at 6. Therefore, Wiluna claims that it can only identify the Defendants and proceed with its case by subpoenaing identifying data from Google. *See id.* at 8.

## II. Legal Standard

"A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except ... when authorized by these rules, by stipulation, or by court order." Fed.R.Civ.P. 26(d)(1). The Federal Rules of Civil Procedure "offer little guidance as to when it is appropriate to authorize expedited and/or early discovery," and the Third Circuit Court of Appeals has not "adopted a standard for evaluating such requests[.]" *See Kone Corp. v. Thyssenkrupp USA, Inc.,* No. 11–465, 2011 U.S. Dist. LEXIS 109518, at \*9, 2011 WL 4478477 (D.Del. Sept. 26, 2011). In the absence of controlling authority, courts within this circuit have employed two different standards for adjudicating requests for early discovery.

First, at least one court within this circuit has "appli[ed] the factors traditionally applied to a preliminary injunction" in order to determine the appropriateness of expedited discovery. *See Gucci Am., Inc. v. Daffy's, Inc.,* No. 00–4463, 2000 U.S. Dist. LEXIS 16714, at \*17, 2000 WL 1720738 (D.N.J. Nov. 14, 2000). Under this approach, a court would determine whether to permit expedited discovery by considering the likelihood of success on the merits, whether a plaintiff will be exposed to irreparable injury, the harm to the defendant, and the public interest. *See id.* at \*19. Applying this standard, the *Gucci* court denied a motion for expedited discovery. *See id.* at \*27–28.

**\*2** However, the prevailing approach on this issue is to decide a motion for expedited discovery based on a reasonableness standard, rather than a preliminary-injunction type standard. To remain abreast of the reasonableness standard, "the court must weigh the need for discovery at an early juncture in the litigation against the breadth of the discovery requests and the prejudice to the responding party[.]" *Kone,* 2011 U.S. Dist. LEXIS 109518, at \*10–11, 2011 WL 4478477. Courts applying the reasonableness standard may consider: (i) the timing and context of discovery requests; (ii) the scope and purpose of the requests; and (iii) the nature of the burden to the responding party. *See id.* at \*11; *Entm't Tech. Corp. v.*

*Walt Disney Imagineering*, No. 03–3546, 2003 U.S. Dist. LEXIS 19832, at *14, 2003 WL 22519440 (E.D.Pa. Oct. 2, 2003) (considering "the totality of the circumstances" in applying the reasonableness standard).

Given the information currently before it, the Court concludes that the reasonableness standard should govern Wiluna's motion. In so doing, the Court notes that *Gucci* "involved [a] unique set[ ] of facts," because the request for expedited discovery in that case was potentially "the product of a type of sham litigation, designed not to shine light on the merits of the allegations contained in the complaint, but instead to permit the plaintiffs to learn the identity of third-party distributors who were selling certain handbags." *Kone*, 2011 U.S. Dist. LEXIS 109518, at *13, 15, 2011 WL 4478477. Here, the Court discerns no such ulterior motive behind Wiluna's motion for expedited discovery. Moreover, at least two courts within this district have adopted the reasonableness standard as opposed to the preliminary-injunction type approach. *See Barbieri v. Wells Fargo & Co.*, No. 09–3196, 2012 U.S. Dist. LEXIS 105969, at *11, 2012 WL 3096701 (E.D.Pa. July 27, 2012); *Walt Disney*, 2003 U.S. Dist. LEXIS 19832, at *13–14, 2003 WL 22519440. District courts are experienced gatekeepers for a host of matters that are measured against the familiar reasonableness balance, and the issue at hand appears entirely within the realm of such matters that call for the court to exercise discretion with due regard for competing interests. Therefore, the Court will adjudicate the pending motion by balancing "the need for discovery at an early juncture" against "the breadth of the discovery requests and the prejudice to the responding party[.]" *Kone*, 2011 U.S. Dist. LEXIS 109518, at *10–11, 2011 WL 4478477.

### III. Application

In this case, Wiluna has presented what facially appears to be a legitimate justification for expedited discovery. As stated above, Wiluna cannot now identify the account holder or holders of the saraclips4sale@gmail.com email address, and Google has thus far declined to voluntarily produce identifying information as to this account holder. Without early discovery, Wiluna cannot determine the appropriate person to serve with a summons and complaint, and this litigation cannot proceed.

*3 On the other side of the ledger, Wiluna seeks permission to propound a narrow discovery request. If granted, Wiluna's motion would only permit it to serve a single subpoena on Google related to the account holder or holders of a single email address. The Court cannot foresee how responding to such a subpoena would unduly prejudice Google. Moreover, to the extent that Google believes that the subpoena does create prejudice, it may move to quash or modify the subpoena pursuant to Federal Rule of Civil Procedure 45. Therefore, the Court finds that Wiluna has made a reasonable request for expedited discovery.

### IV. Conclusion

For the foregoing reasons, the Court grants Wiluna's motion for expedited discovery.

An Order consistent with this Memorandum follows.

### ORDER

AND NOW, this 3rd day of April, 2013, upon consideration of Plaintiff Wiluna Holdings, LLC's ("Wiluna") Complaint (Docket No. 1) and Motion for Expedited Discovery (Docket No. 4), and for the reasons stated in the accompanying Memorandum, it is hereby ORDERED that the Motion is GRANTED as follows:

1. Plaintiff Wiluna may, pursuant to Federal Rule of Civil Procedure 45, serve a single subpoena on Google, Inc. for the limited purpose of obtaining identifying information as to the account holder(s) of the email address saraclips4sale@gmail.com.

2. Plaintiff Wiluna shall serve a copy of the Court's Memorandum and Order with the subpoena.

3. Upon being served with the subpoena, Google shall immediately preserve all subpoenaed information. After ensuring that the information is preserved, Google shall promptly notify the account holder(s) that his/her/its identity has been subpoenaed by Wiluna.

4. Plaintiff Wiluna may only use the information disclosed in the response to the subpoena for the purpose of protecting and enforcing its rights as set forth in the Complaint. An improper use of this information may result in sanctions.

5. Nothing set forth herein abrogates the right of any person or party to move to quash or modify the subpoena in accordance with Federal Rule of Civil Procedure 45.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 1336792

---

End of Document

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 3795948
Only the Westlaw citation is currently available.
United States District Court,
M.D. Pennsylvania.

MALIBU MEDIA LLC, Plaintiff
v.
John DOE, subscriber assigned IP
address 174.55.233.190, Defendant.

Civil No. 1:15–cv–1129.
|
Signed June 18, 2015.

**Attorneys and Law Firms**

Christopher P. Fiore, Christopher P. Fiore, Esquire,
Harleysville, PA, for Plaintiff.


*MEMORANDUM*

SYLVIA H. RAMBO, District Judge.

*1  In this internet copyright infringement action, Plaintiff claims that Defendant, identified at this time only by his or her IP address, used a file-sharing network to infringe Plaintiff's copyrighted motion pictures. (*See generally* Doc. 1.) Presently before the court is Plaintiff's motion for expedited discovery. (Doc. 5.) Plaintiff seeks to serve third-party subpoenas on an internet service provider ("ISP"), identified by a forensic investigator, prior to a Rule 26(f) conference in order to obtain the name and address of the unidentified defendant, who is associated with the identified Internet Protocol ("IP") address that was allegedly used to illegally copy and distribute Plaintiff's copyrighted work. For the following reasons, Plaintiff's motion to conduct expedited discovery with respect to the identified IP address will be granted, subject to the restrictions set forth in the accompanying order.


**I. *Background***

Plaintiff, Malibu Media LLC (d/b/a "X–Art.com"), is a filmmaker and motion picture copyright holder that is responsible for the production of numerous commercially released motion pictures that are featured on X–Art.com, its subscription-based website. (Doc. 1, ¶ 8.) Plaintiff

asserts the following facts in its complaint (Doc. 1), motion for expedited discovery (Doc. 5), and brief in support thereof (Doc. 6). The court accepts the averments as true for purposes of this motion, without making any findings of fact.

Plaintiff claims that the individual associated with IP address 174.55.233.190 used the BitTorrent protocol to infringe on its exclusive rights by copying and distributing a large file containing 127 separate movies, despite Plaintiff holding a registered copyright for each. (Doc. 1, ¶¶ 2–4.) By way of background, BitTorrent is a common peer-to-peer file sharing system that allows users to distribute large amounts of data over the Internet. (Doc. 1, ¶ 12.) The BitTorrent protocol allows an individual user to copy a digital file from another user via download, and in turn, distribute the file to other users via upload. (*See id.* at ¶¶ 12–17.) For the file to be placed on the protocol, a user initially uploads a new file, such as a motion picture, which BitTorrent breaks up into multiple "bits." (*See id.* at ¶ 14.) BitTorrent allows many users to join on the network to download different pieces of the initial file from each other, rather than transferring a much larger digital file. (*See id.*) Once a user has downloaded all the pieces of the file, BitTorrent uses a unique identifier on each piece, known as a "hash value," to reassemble the pieces into a complete file so the user can play the downloaded file. (*See id.* at ¶¶ 16–18.) Although the individual user does not display his or her name while using BitTorrent, an individual exposes the IP address he or she is using when downloading or sharing a file.

Plaintiff engaged IPP International UG ("IPP International"), a forensic investigator, to identify direct infringers of its copyrighted Motion Pictures. (*Id.* at ¶ 19.) Utilizing forensic software, IPP International determined that an individual using IP address 174.55.233.190, the John Doe Defendant in this matter, distributed at least one piece, which was identified by a unique hash value, of each of Plaintiff's Motion Pictures by using the BitTorrent protocol. (Doc. 1, ¶¶ 19–22; Doc. 1–3.) In other words, the John Doe Defendant allegedly used BitTorrent to obtain and distribute a complete copy of Plaintiff's works as enumerated in Exhibits A and B of the complaint. (Doc. 1, ¶ 21.) IPP International's software used geolocation technology to trace the identified IP address to a geographic area purportedly within the Middle District of Pennsylvania. (*Id.* at ¶¶ 6–7.)[1] Plaintiff alleges that it did not authorize or consent to the John Doe

Defendant's reproduction or redistribution of the work. (Id. at ¶ 33.) Plaintiff's complaint asserts that the John Doe Defendant's aforementioned conduct constitutes direct copyright infringement.

*2 On June 11, 2015, just two days after commencing the captioned action, Plaintiff filed the instant motion for expedited discovery, seeking leave to serve a subpoena upon Comcast Cable, the ISP associated with the IP address identified by IPP International. (See Doc. 5.) In the motion, Plaintiff asserts that only the ISP is able to determine the identity of the John Doe Defendant, as the ISP has the billing information for each account holder associated with each IP address. (See Doc. 6, pp. 9–10 of 13.) Plaintiff argues such expedited discovery is reasonable under the circumstances.

## II. *Legal Standard*

Generally, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f). [2] Fed.R.Civ.P. 26(d)(1). However, courts have broad discretion to manage the discovery process and can expedite or otherwise alter the timing and sequence of discovery. See id.

Courts faced with motions for expedited discovery requests to ascertain the identity of "John Doe" defendants in internet copyright infringement cases often apply the "good cause" or reasonableness standard.[3] See Canal Street Films v. Does 1–22, Civ. No. 13–cv–0999, 2013 WL 1775063, *2 (M.D.Pa. Apr.25, 2013); see also, e.g., Samuel, Son & Co. v. Beach, Civ. No. 13–cv–0128, 2013 WL 4855325, *3 (W.D.Pa. Sept.11, 2013); West Coast Prod. Inc. v. Does 1–169, Civ. No. 12–cv–5930, 2013 WL 3793969, *1 (D.N.J. July 19, 2013); Leone v. Towanda Borough, Civ. No. 12–cv–0429, 2012 WL 1123958, *2 (M.D.Pa. Apr.4, 2012) (citing Kone Corp. v. Thyssenkrupp USA, Inc., Civ. No. 11–cv–0465, 2011 WL 4478477, *3 (D.Del. Sept.26, 2011)).

On ruling on a motion for expedited discovery, the court should consider the "entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances." Modern Woman, LLC v. Does I–X, Civ. No. 12–cv–4858, 2013 WL 888603, *2 (D.N.J. Feb.27, 2013) (citing Better Packages, Inc. v. Zheng, Civ. No. 05–cv–4477, 2006 WL 1373055, *2 (D.N.J. May 17, 2006)). Good cause is usually found

where the plaintiff's need for expedited discovery, in consideration of the administration of justice, outweighs the possible prejudice or hardship to the defendant. Leone, 2012 WL 1123958 at *2; Fonovisa, Inc. v. Does 1–9, Civ. No. 07–cv–1515, 2008 WL 919701, *10 n. 22 (W.D.Pa. Apr.3, 2008) (citing Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 276 (N.D.Cal.2002)).

## III. *Discussion*

The reasonableness standard requires the court to consider the "actual circumstances of this case, as well as ... certain factors such as ... the need for discovery, and the breadth of the moving party's discovery requests." Kone Corp., 2011 WL 4478477 at *6 (quoting BAE Sys. Aircraft Controls, Inc. v. Eclipse Aviation Corp., 224 F.R.D. 581, 587 (D.Del.2004)). In the matter sub judice, the actual circumstances favor expedited discovery and satisfy the reasonableness standard.

*3 For purposes of the instant motion, Plaintiff asserts a prima facie claim of copyright infringement.[4] Moreover, Plaintiff has no way to identify the alleged infringer, apart from serving a subpoena on the identified ISP. Accordingly, without granting the pending motion, Plaintiff can neither identify nor serve John Doe Defendant, and this action cannot proceed. Furthermore, Plaintiff asserts that, because the protocol does not have a central server, the only way Plaintiff can prevent the continued illegal distribution of its work is to take legal action. Thus, identifying and serving the alleged infringer is the only method through which Plaintiff can protect its copyright interests. Finally, the expedited discovery requested relates to serving subpoenas upon Comcast Cable to gather the John Doe Defendant's account information for the purpose of properly identifying the alleged infringer and serving the complaint. Thus, Plaintiff's expedited discovery request appears reasonable and not overbroad.

Although the court concludes that the request for expedited discovery is reasonable under the circumstances, in light of the unavoidable ex parte nature of such a request, the court finds it prudent to incorporate some protections to avoid any unintended consequences of the disclosure of the John Doe Defendant's information. Other district courts have expressed similar concerns and have incorporated conditions intended to curtail unfettered expedited discovery in similar copyright

infringement actions. *See, e.g., Vision Films, Inc. v. John Does 1–24,* Civ. No. 12–cv–1746, 2013 WL 1163988, *5–6 (D.Del. Mar.20, 2013) (citing *Digital Sin v. Does 1–176,* 279 F.R.D. 239, 244–45 (S.D.N.Y.2012)). Accordingly, the court will grant Plaintiff's motion, subject to the conditions set forth in the accompanying order.

## IV.  *Conclusion*

For the foregoing reasons, the court finds that Plaintiff has established a *prima facie* claim for copyright infringement for purposes of the instant motion and that Plaintiff is unable to identify the John Doe Defendant beyond his or her IP address, 174.55.233.190. Moreover, the court finds that Plaintiff's request for expedited discovery is narrowly tailored. Accordingly, the court concludes that Plaintiff's request for expedited discovery is reasonable under the circumstances. Therefore, Plaintiff's motion (Doc. 5) will be granted.

An appropriate order will issue.

## All Citations

Not Reported in F.Supp.3d, 2015 WL 3795948

Footnotes

1   In situations where a plaintiff files suit against then unnamed defendants, courts have accepted IP addresses as establishing a *prima facie* case of personal jurisdiction. *Malibu Media, LLC v. John Does 1–15,* Civ. No. 12–cv–2077, 2012 WL 3089383, *10 (E.D.Pa. July 30, 2012) (citations omitted). Plaintiff's factual assertion as to the location of the John Doe Defendant at the time of the alleged infringement establishes personal jurisdiction for purposes of the pending motion. Should the ISP or the John Doe Defendant make a showing contrary to this assertion, the court will reexamine the issue of personal jurisdiction.

2   Federal Rule of Civil Procedure 26(f) provides that "the parties must confer as soon as practicable—and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b)." Fed.R.Civ.P. 26(f) (1). Parties need not await the scheduling of a Rule 16 conference before holding a Rule 26(f) conference.

3   Some district courts in the Third Circuit have applied an injunctive relief standard. *See Leone v. Towanda Borough,* Civ. No. 12–cv–0429, 2012 WL 1123958, *2 (M.D.Pa. Apr.4, 2012). The injunctive relief standard is more stringent and requires the moving party to demonstrate: (1) irreparable injury; (2) some probability of success on the merits; (3) some connection between the expedited discovery and the avoidance of the irreparable injury; and (4) some evidence that the injury that will result without expedited discovery is greater than the injury that the defendant will suffer if the expedited relief is granted. *Gucci Am., Inc. v. Daffy's Inc.,* Civ. No. 00–cv–4463, 2000 WL 1720738, *6 (D.N.J. Nov.14, 2000) (quoting *Notaro v. Koch,* 95 F.R.D. 493, 405 (S.D.N.Y.1982)). As noted by the *Leone* Court, the Third Circuit has not yet adapted a clear standard, however, the recent trend among courts in this circuit favors the "good cause" or reasonableness standard. *Leone,* 2012 WL 1123958 at *2. The court applies this standard to Plaintiff's motion.

4   To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) (citing *Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 548, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985)). Here, Plaintiff satisfies both elements. First, Plaintiff avers that it is the copyright holder for each of the Motion Pictures. (*See* Doc. 1, ¶ 3; see also Doc. 1–3, Exhibit B.) In addition, Plaintiff asserts that the John Doe Defendant, through the use of BitTorrent, illegally copied, reproduced, and distributed the eighteen Motion Pictures. (Doc. 1, ¶¶ 2, 20; Doc. 1–2, Exhibit A.) Therefore, the court finds that Plaintiff has adequately set forth a prima facie claim of copyright infringement for purposes of the motion sub judice. *See Malibu Media,* 2012 WL 3089383 at *7.

End of Document                                © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 184024
Only the Westlaw citation is currently available.
United States District Court,
D. Delaware.

Richard J. Williams and Mary Anne
Cloud–Williams, Delaware residents,
on their behalf and of those similarly-
situated Delaware residents, Plaintiffs,

v.

Ocwen Loan Servicing, LLC, Defendant.

Civil Action No. 14–1096–LPS–CJB
|
Signed January 13, 2015

**Attorneys and Law Firms**

Peter K. Schaeffer, Jr., Dover, DE, Mark M. Billion, Billion Law, Wilmington, DE, for Plaintiff.

William P. Bowden, Peter H. Kyle, Toni–Ann Platia, Ashby & Geddes, Wilmington, DE, for Defendant.

*MEMORANDUM ORDER*

Christopher   J.   Burke,   UNITED   STATES
MAGISTRATE JUDGE

**\*1** Presently before the Court is Plaintiffs Richard J. Williams and Mary Anne Cloud–Williams' (collectively, "Plaintiffs") "Motion for Expedited Discovery." (D.I. 8) Having considered the parties' written submissions, and for the reasons that follow, the Court DENIES Plaintiffs' motion.

**I. BACKGROUND**

On August 5, 2014, Plaintiffs filed the instant suit against Defendant Ocwen Loan Servicing, LLC ("Defendant") in the Superior Court for the State of Delaware, in and for New Castle County. (D.I. 1, ex. A) In the Complaint, Plaintiffs, on their own behalf and on behalf of similarly-situated Delaware residents, allege various state law causes of action and a claim for violation of the Fair Debt Collection Practices Act ("FDCPA"). (*Id.*) The Complaint's allegations, *inter alia,* relate to a bankruptcy proceeding initiated by Plaintiffs on August 30, 2013.

(*Id.* at ¶¶ 5–21) Plaintiffs allege that this bankruptcy proceeding was occasioned by the fact that Defendant, the servicer of Plaintiffs' home mortgage, had wrongfully claimed that Plaintiffs were in arrears as to the mortgage. (*Id.*) On August 25, 2014, Defendant filed a notice of removal of the case to this Court. (D.I. 1)

On November 4, 2014, Plaintiffs filed the instant motion. (D.I. 8)[1] With the motion, Plaintiffs seek the following information from Defendant: (1) "[a] payment history for their Mortgage (as that term is defined in the Complaint) from the date of 30 August 2013 to 1 November 2014[;]" (2) "[a]ny and all Mortgage account statements generated by the Defendant internally or for distribution to the Plaintiffs from the date of 30 August 2013 to 1 November 2014[;]" and (3) "[r]ecords reflecting any and all Mortgage escrow disbursements from the date of 30 August 2013 to 1 November 2014." (*Id.* at 1) The instant motion was fully briefed on November 21, 2014. (D.I. 10)[2] On the same day, Chief Judge Leonard P. Stark referred this case to the Court to hear and resolve all pretrial matters, up to and including case-dispositive motions. (D.I. 9)

**II. STANDARD OF REVIEW**

Generally, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)" of the Federal Rules of Civil Procedure.[3] Fed.R.Civ.P. 26(d)(1). However, courts have broad discretion to manage the discovery process, and can accelerate or otherwise alter the timing and sequence of discovery. *See id.; see also* Fed.R.Civ.P. 26(d) advisory committee's note (1993) ("Discovery can begin earlier if authorized ... by local rule, order, or stipulation. This will be appropriate in some cases, such as those involving requests for a preliminary injunction or motions challenging personal jurisdiction."). Federal courts are also specifically authorized, if circumstances warrant, to shorten the time for responses to interrogatories and requests for production of documents, and to permit early depositions. Fed.R.Civ.P. 30(a)(2)(A)(iii), 33(b)(2) & 34(b)(2)(A).

**\*2** The Federal Rules of Civil Procedure offer little guidance as to when it is appropriate to authorize expedited and/or early discovery. Although the Third Circuit has not adopted a standard for evaluating such requests, the Court has previously held that a "good

cause standard should apply—one requiring the party seeking discovery to demonstrate that its request is "reasonable" in light of the relevant circumstances. *See Kone Corp. v. ThyssenKrupp USA, Inc.*, Civ. Action No. 11-465-LPS-CJB, 2011 WL 4478477, at *4–6 (D.Del. Sept. 26, 2011); *see also Vision Films, Inc. v. John Does 1–24*, Civil Action No. 12–1746–LPS–SRF, 2013 WL 1163988, at *3 (D.Del. Mar. 20, 2013). Under this "reasonableness" standard, the court must weigh the need for discovery at an early juncture in the litigation against the breadth of the discovery requests and the prejudice to the responding party. *Kone Corp.*, 2011 WL 4478477, at *4. It does so by considering such factors as: (1) the timing and context of the discovery requests, including whether a preliminary injunction hearing has been scheduled; (2) the scope and purpose of the requests; and (3) the nature of the burden to the respondent. *Id.* (citing *Better Packages, Inc. v. Zheng*, No. Civ.A 05–4477(SRC), 2006 WL 1373055, at *3 (D.N.J. May 17, 2006)).

## III. DISCUSSION

After considering the three factors set out above, the Court finds that expedited discovery is not warranted.

With regard to the timing and context of the discovery requests, this factor favors the moving party in situations where the urgent need for action is clear. For example, expedited discovery has been deemed appropriate where a plaintiff sought to issue subpoenas to internet service providers ("ISPs") in order to identify alleged copyright infringers named as John Doe defendants; there, "expedited discovery [was] necessary because evidence identifying the defendants may be destroyed as a result of routine deletion by ISPs." *Vision Films, Inc.*, 2013 WL 1163988, at *1–2, *4. Such discovery has also been found appropriate when sought "in connection with [a] pending motion for a preliminary injunction" in order to "help [ ] ensure a clear and focused factual record" at an upcoming hearing on the motion. *Kone Corp.*, 2011 WL 4478477, at *1, *7. But here, Plaintiffs do not clearly articulate why their request implicates similarly urgent circumstances. It is apparent that Plaintiffs are making the request because they "would like to know the circumstances surrounding their payment and the Defendant's performance of its obligations under the mortgage." (D.I. 8 at 2) However, they do not explain why obtaining the information in the regular course of discovery (assuming the information is relevant to their claims) would not suffice.

As to the scope and purpose of the requests, it is clear that Plaintiffs filed the motion because they have a subjective fear of future foreclosure, and because they want to be sure that their most recent mortgage payments are "timely and properly applied." (D.I. 8 at 3–4 ("The Plaintiffs have already been the victims of wrongful foreclosure and do not wish to repeat their prior experience.")) What is a bit less clear, however, is how the requested discovery is relevant to the particular causes of action pled in the Complaint. (D.I. 10 at 4 (Defendant asserting that the requested discovery is "unrelated [and] unconnected" to the Complaint's allegations)) It could be that the requests *are* relevant, as the Complaint's allegations do relate, as a general matter, to the subject of the alleged misapplication by Defendant of Plaintiffs' (prior, pre-bankruptcy) mortgage payments. (D.I. 1, ex. A at ¶ 36 (Complaint alleging that Defendant wrongfully diverted Plaintiffs' past mortgage payments, by diverting those payments to "unauthorized and non-bona fide fees" instead of "properly applying them to escrow accounts and to reduce principal and interest")) But Plaintiffs have not clearly explained that relevance in their briefing, and so this factor does not favor their position.

*3 Lastly, as to the nature of the burden to the respondent, Defendant does not explicitly address how—were it required to produce the materials now—this would amount to a real burden to it. Yet because the other two "reasonableness" factors support Defendant's position, and because Plaintiffs have not well explained the basis for their motion, the Court finds that the motion should be denied.[4] *See Barbieri v. Wells Fargo & Co.*, Civil Action No. 09–3196, 2012 WL 3089373, at *3–4 (E.D.Pa. July 27, 2012) (denying plaintiffs' request for expedited discovery by finding the "reasonableness" standard had not been met, in a case arising out of a dispute regarding a home mortgage placed into foreclosure, because the request was "vague, ambiguous and unlimited in scope[,]" and because the plaintiffs "fail[ed] to allege how [the requested] discovery ... is relevant to the instant lawsuit"); *see also Techtronic Indus. N. Am., Inc. v. Inventek Colloidal Cleaners LLC*, Civil No. 13–4255 (NLH/JS), 2013 WL 4080648, at *1– 3 (D.N.J. Aug. 13, 2013) (denying plaintiff's request for expedited discovery in a case arising out of an alleged breach of a loan agreement where, *inter alia*, the proposed discovery was "overbroad" and plaintiff failed to "present[ ] a good reason why discovery needs to be accelerated").

2011 WL 2634166
Only the Westlaw citation is currently available.
United States District Court, E.D. Virginia,
Norfolk Division.

HARD DRIVE PRODUCTIONS, INC., Plaintiff,

v.

John DOES 1–30, Defendants.

Action No. 2:11cv345.

|

July 1, 2011.

**Attorneys and Law Firms**

Timothy V. Anderson, Anderson & Associates, Virginia Beach, VA, for Plaintiff.

## OPINION AND ORDER

TOMMY E. MILLER, United States Magistrate Judge.

*1 This *Ex Parte* Motion for Leave to take Discovery prior to the Rule 26(f) Conference (ECF No. 3) is brought before the undersigned requesting that Plaintiff be permitted to perform limited discovery prior to the Rule 26(f) Conference. For the reasons herein, Plaintiff's motion for expedited discovery is GRANTED.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff Hard Drive Productions, Inc., ("Plaintiff") filed a Complaint on June 17, 2011, for copyright infringement against John Does 1–30. ECF No. 1. The Plaintiff alleges that Defendants used BitTorrent based peer-to-peer networks to unlawfully distribute Plaintiff's copyrighted materials. In peer-to-peer-networks, each individual internet user is called a "peer" while an entire group of users is identified as a "swarm." Mot. Expedited Disc. Ex. A ¶ 9, ECF No. 3–1. The BitTorrent protocol allows every peer to download and upload a transferred file. As the swarm continues to expand, the distribution of the copyrighted material quickens. *Id.* Plaintiff argues that because the BitTorrent protocol does not have a central server, the most effective way to combat content piracy is by identifying individual peers. *Id.* ¶ 11.

Plaintiff brings this Complaint based on information collected by Media Copyright Group, LLC ("MCG"), that suggests Defendants have been distributing and reproducing Plaintiff's copyrighted works. MCG used peer-to-peer forensic software to identify thirty (30) Internet Protocol ("IP") addresses that used the BitTorrent protocol for mass distribution and reproduction of the copyrighted material. Mot. Expedited Disc. Ex. A ¶ 12. An IP address is a specific number assigned by Internet Service Providers ("ISP") to customers. *Id.* ¶ 16. An ISP keeps records of internet users' information and assigns each individual internet user their own IP address. *Id.* ¶ 17. Many ISPs assign "dynamic" IP addresses that change over time and only keep customers names attached to the same IP address for a short period of time. *Id.* ¶ 16. Thus, it is not possible to match a user to an IP address once the logs have been deleted.

On the same day the Complaint was filed, Plaintiff filed an *Ex Parte* Motion for Leave to take Discovery prior to the Rule 26(f) Conference (ECF No. 3) to allow them to issue subpoenas pursuant to Fed.R.Civ.P. 45 to the ISPs. The requested subpoenas would be used to acquire the names, addresses, telephone numbers, email addresses, and Media Access Control address of Doe Defendants from the ISPs. Mot. Expedited Disc. 1. The Motion was referred to the undersigned Magistrate Judge on June 20, 2011.

## II. STANDARD OF REVIEW

Rule 26(b)(2) provides that the court may alter the frequency and extent of discovery as guided by the subsections in the Rule. Fed.R.Civ.P. 26(b)(2). The Court has "wide latitude in controlling discovery and ... its rulings will not be overturned absent a showing of clear abuse of discretion." *Rowland v. Am. Gen. Fin., Inc.,* 340 F.3d 187, 195 (4th Cir.2003). The discovery rules contained in the Federal Rules of Civil Procedure provide tools for a court to adjust the discovery time outlined by Rule 26, and "if warranted, to expedite the time for responding to the discovery sought." *Physicians Interactive v. Lathian Sys., Inc.,* No. CA 03–1193–A, 2003 WL 23018270, at *4 (E.D.Va. Dec.5, 2003). Courts have found that immediate discovery "should be granted when some unusual circumstances or conditions exist that would likely prejudice the party if he were required to wait the normal time." *Fimab–Finanziaria Maglificio*

*Biellese Fratelli Fila, S.p.A. v. Helio Import/Export, Inc.,* 601 F.Supp. 1, 3 (S.D.Fla.1983) (citing *Gibson v. Bagas Rests.,* 87 F.R.D. 60, 62 (W.D.Mo.1980)).

*2  In *McMann v. Doe,* the court held that leave to file subpoenas for early discovery should be granted if there is a showing of irreparable harm and need to proceed ex parte. *McMann v. Doe,* 460 F.Supp.2d 265-66 (D.Mass. Oct.31, 2006). When these factors are proven, expedited discovery is needed to ensure that "justice is done to end the alleged harm." *Id.* at 266. In this case, the motion must proceed *ex parte* because the Doe Defendants are not named. The sole purpose of the expedited discovery is to name the Defendants.

## III. *ANALYSIS*

### A. Irreparable Harm to Plaintiff

Plaintiff has sufficiently shown that they would suffer irreparable harm if expedited discovery is not granted. Through the collection of data by MCG, Plaintiff argues that their copyrighted works are being reproduced and distributed through the BitTorrent protocol peer-to-peer network. The IP addresses of thirty (30) peers were identified; however, no other information is known. Plaintiffs seek to acquire the names, addresses, telephone numbers, email addresses, and Media Access Control address of Defendant Does by issuing subpoenas to the six ISPs listed in Exhibit A attached to the Complaint. ECF No. 1-2. Further, Plaintiff argues that expedited discovery is necessary because the ISPs will only keep the logs of the dynamic IP addresses for a short period of time. Mot. Expedited Disc. Ex. A ¶ 16. Without the IP logs, it will be impossible to match the IP addresses to the specific internet users. Thus, Plaintiff will not be able to serve the Complaint on Defendants and, in turn, will not receive remedies for the copyright infringement. *See St. Louis Group, Inc. v. Metals & Additives Corp.,* No. L-11-22, 2011 U.S. Dist. LEXIS 55845, at * 12, 2011 WL 1833460 (S.D.Tex. Apr.26, 2011) (citing *McMann v. Doe,* 460 F.Supp.2d 259, 265-66 (D.Mass.2006)) (holding a court should allow expedited discovery on the basis of irreparable harm if the plaintiff will otherwise be denied the proper remedy); *Sony Music Entm't Inc. v. Does 1-40,* 326 F.Supp.2d 556, 565-66 (S.D.N.Y. July 26, 2004) (allowing expedited discovery when there is a central need for the subpoenaed information in order to advance the claim).

A majority of District Courts have granted expedited discovery where evidence for an infringement action may no longer be available at a later date. *See Monsanto Co. v. Woods,* 250 F.R.D. 411, 413 (E.D.Mo.2008); *McMann v. Doe,* 460 F.Supp.2d 259, 265-66 (D.Mass. Oct.31, 2006); *Pod-ners, LLC v. N. Feed & Bean of Lucerne Liab. Co.,* 204 F.R.D. 675, 676 (D.Colo.2002); *St. Louis Group, Inc. v. Metals & Additives Corp.,* 2011 U.S. Dist. LEXIS 5584, at *11-12, 2011 WL 1833460 (S.D.Tex. Apr. 26, 2011); *Warner Bros. Records Inc. v. Does 1-4,* No. 207cv0424TC, 2007 WL 1960602, at *2 (D.Utah July 5, 2007). *But see Millennium TGA, Inc. v. Does 1-21,* No. 11-2258SC, 2011 WL 1812786, at * 2 (N.D.Cal. May 12, 2011) (holding that the request for leave to take early discovery is denied "[b]ecause [p]laintiff has not established that its conspiracy claim could survive a motion to dismiss").

### B. Lack of First Amendment Protection

*3  Further, this Court must review the Doe Defendants' qualified First Amendment right to anonymous expression. *See Warner Bros. Records, Inc. v. Doe,* No. 5:08-CV-116-FL, 2008 WL 5111884, at *6 (E.D.N.C. Sept.26, 2008). The First Amendment protection applies to anonymous speech and the internet. *Warner Bros. Records, Inc.,* 2008 WL 5111884, at *7 (citing *Buckley v. Am. Constitutional Law Found.,* 525 U.S. 182, 200, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999); *Reno v. ACLU,* 521 U.S. 844, 870, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997)). However, this protection does not apply to acts of copyright infringement. *Id.* (citing *Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 555-56, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985)). The Court in *Sony Music Entm't v. Does 1-40,* held that copyright infringers do not have an expectation for First Amendment protection of anonymous speech. *Id.* (citing *Sony Music Entm't v. Does 1-40,* 326 F.Supp.2d 556, 564 (S.D.N.Y.2004)). Specifically, Defendants do not have an expectation of privacy in the reproduction and distribution of the electronic media without the permission of the copyright holder. *See Warner Bros. Records Inc.,* 2008 WL 5111884, at * 30-31.

Under 47 U.S.C.A § 551(c)(2)(B), an ISP can disclose personal identification information of an internet user "pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed[.]" Because of Defendants' limited right to free speech, the requested

subpoenas would not violate their First Amendment rights. Additionally, the expedited discovery is important to furthering litigation because the ISP may destroy Defendants' personal records of previous IP addresses:

(e) Destruction of information

A cable operator shall destroy personally identifiable information if the information is no longer necessary for the purpose for which it was collected and there are no pending requests or orders for access to such information under subsection (d) of this section or pursuant to a court order.

47 U.S.C.A § 551(e). Thus, the First Amendment does not preclude the Court from granting expedited discovery of Doe Defendants' identities by the ISPs. *Sony Music Entm't Inc.*, 326 F.Supp.2d at 564.

### IV. *ORDER*

For the foregoing reasons, the Court ORDERS that Plaintiff's *Ex Parte* Motion for Leave to take Discovery Prior to the Rule 26(f) Conference (ECF No. 3) be GRANTED. Accordingly it is hereby ORDERED that Plaintiff may immediately serve Rule 45 subpoenas, which are limited to the following categories of entities and information:

> From Internet Service Providers (ISPs) identified in the Exhibit A attached to the Complaint and any other entity identified as a provider of Internet service to one of the Doe Defendants in response to a subpoena or as a result of ongoing BitTorrent activity monitoring: information sufficient to identify each Defendant, including name, current (and permanent) address, telephone number, email address, and Media Access Control address; it is further

*4 ORDERED any information disclosed to the Plaintiff in response to a Rule 45 subpoena may be used by the Plaintiff solely for the purpose of protecting Plaintiff's rights as set forth in its Complaint; it is further

ORDERED that Plaintiff and any entity which receives a subpoena shall confer, if necessary, with respect to the issue of payment for the information requested in the subpoena or for resolution of IP addresses which are not controlled by such entity, duplicate IP addresses that resolve to the same individual, other IP addresses that do not provide the name and other information requested of a unique individual, or for the entity's internal costs to notify its customers; it is further

ORDERED that any entity which receives a subpoena and elects to charge for the costs of production shall provide a billing summary and any cost reports that serve as a basis for such billing summary and any costs claimed by such entity; it is further

ORDERED that Plaintiff shall receive a copy of this Order along with any subpoenas issued pursuant to this Order; it is further

ORDERED that if any entity subpoenaed pursuant to this Order wishes to move to quash the subpoena, it must do so before the return date of the subpoena, which shall be 30 days from the date of service; it is further

ORDERED that the subpoenaed entity shall preserve any subpoenaed information pending the resolution of any timely-filed motion to quash.

The Clerk is DIRECTED to mail a copy of this Opinion and Order to the counsel of record.

### All Citations

Not Reported in F.Supp.2d, 2011 WL 2634166

---

   © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 7494319
Only the Westlaw citation is currently available.
United States District Court,
E.D. Virginia,
**Richmond Division**.

Cell Film Holdings, LLC, Plaintiff,

v.

John Does 1–12, Defendants.

Civil Action No. 3:16cv749
|
Signed 12/29/2016
|
Filed 12/30/2016

**Attorneys and Law Firms**

Dale R. Jensen, Dale Jensen PLC, Staunton, VA, for Plaintiff.

## MEMORANDUM OPINION

M. Hannah Lauck, United States District Judge

**\*1** This matter comes before the Court on two motions: (1) the Motion for Discovery for Leave to Serve Third Party Subpoenas (the "Motion for Discovery") filed by CELL Film Holdings, LLC ("CELL"), (ECF No. 2); and, (2) the First Motion to Extend Time Pursuant to Federal Rule of Civil Procedure 4(m) (the "Motion to Extend") filed by CELL, (ECF No. 6). The Court exercises jurisdiction pursuant to 28 U.S.C. § 1338(a).[1] The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will: (1) sever and dismiss without prejudice all defendants except John Doe 1; (2) grant CELL'S Motion for Discovery as to John Doe 1; and, (3) grant CELL'S Motion to Extend as to John Doe 1.

### I. Factual and Procedural Background

#### A. Allegations in the Complaint

On September 9, 2016, CELL filed its Complaint for Copyright Infringement against John Does 1–12 in this Court.[2] (ECF No. 1.) The Complaint listed 12 John Doe defendants ("the Defendants"), identified by their Internet Protocol ("IP") addresses, who had allegedly infringed on CELL'S copyrighted work, the motion picture *Cell* ("the Movie"), in violation of the United States Copyright Act, 17 U.S.C. §§ 101, *et seq.* To establish personal jurisdiction in this District, CELL used "geolocation technology" to trace the IP addresses of all the Defendants to a point of origin within this District.

The Complaint alleges that, using a network called a "BitTorrent protocol" ("BitTorrent"), the Defendants "reproduced, distributed[,] and offered to distribute" the Movie without CELL'S consent or permission. (Compl. 2, 4–5.) The Defendants' alleged use of BitTorrent occurred over the span of one day: June 12, 2016. CELL contends that BitTorrent differs from a Peer-to-Peer protocol in that it facilitates data-sharing among individuals and "makes even small computers with low bandwidth capable of participating in large data transfers." (*Id.* at 4.) In BitTorrent, the initial shared file is called a "seed," and other users on the network are called "peers." When peers connect to the network and request the seed, they receive different pieces of the seed data from other peers who have already downloaded the file. Each peer thus "becomes a part of the network from which the file can be downloaded." (*Id.*) This group of peers is called a "swarm." CELL claims that with BitTorrent, "every downloader [is] also an uploader" of the shared file, and every member of a swarm serves as a source for the seed file, so long as the member remains online at the time other peers download the file. (*Id.* at 4–5.) Furthermore, "because of the nature of the swarm downloads ... every [peer] is [downloading seed data] from many [ISPs] in numerous jurisdictions." (*Id.* at 5.) Uploading one seed file to a BitTorrent network "can result in nearly instantaneous worldwide distribution of that single [file] to a limitless number of people." (*Id.* at 5–6.)

**\*2** CELL asserts that "each Defendant deliberately participated in a swarm and/or reproduced and/or distributed the same seed file" of the Movie, and thereby "participated in a collective and interdependent manner with other Defendants" to infringe CELL'S copyright. (*Id.* at 7.) CELL states that because all the Defendants participated in the "same swarm" using BitTorrent, all the Defendants participated in the "same transaction, occurrence[,] or series of transactions or occurrences as the

other Defendants in the swarm." (*Id.* at 7-8.) CELL seeks declaratory, injunctive, and monetary relief.

## B. The Motion for Discovery

On October 31, 2016, CELL filed the Motion for Discovery. CELL seeks leave to serve limited discovery on the Internet Service Providers ("ISPs") from which the Defendants obtain Internet access in order to determine the Defendants' identities. In support of the Motion for Discovery, CELL asserts, *inter alia*, that: (1) good cause exists to grant the motion; (2) CELL seeks limited and specific discovery; (3) no alternative means exists to learn Defendants' identities; (4) CELL requires discovery to advance its asserted claims; and, (5) CELL'S interest in knowing Defendants' identities outweighs Defendants' interests in remaining anonymous. (*Id.* at 6–14.) CELL requests the Court's permission to "serve a Rule 45[3] subpoena on the ISPs it has identified as of this date ... so that the ISPs can divulge the true name and address of each Doe Defendant that Plaintiff has identified to date...." (Mot. Disc. 15.)

## C. CELL's Motion to Extend Time

On December 7, 2016, CELL filed the Motion to Extend, requesting the Court to extend time to serve the Defendants. CELL requests an extension of ninety days "until March 8, 2017[,] to complete identification, joinder, and service of the defendants in this case." (Mot. Extend Time 1.)

## II. The Court Will *Sua Sponte* Sever and Dismiss Without Prejudice All Defendants Except John Doe 1

### A. Legal Standard for Joinder of Defendants

Federal Rule of Civil Procedure 20(a)(2) allows joinder of defendants if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and[,] (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Although misjoinder cannot undergird the dismissal of an action, "[o]n motion or *on its own*, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21 (emphasis added).

Rule 20 supports the "broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties[,] and remedies is strongly encouraged." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966). "[T]he rule should be construed in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Saval v. BL Ltd*, 710 F.2d 1027, 1031 (4th Cir. 1983) (quoting *Mosley v. General Motors Corp.*, 497 F.2d 1330,1332 (8th Cir. 1974)). The transaction or occurrence test of Rule 20 generally proceeds on a case by case basis, and permits all "reasonably related claims ... to be tried in a single proceeding." *Id.* If the joinder of parties or claims will result in prejudice, expense, or delay, the Court has discretion to deny joinder. *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 n.5 (4th Cir. 2007). The propriety of joinder rests within the sound discretion of the trial court. *Saval*, 710 F.2d at 1031.

[3] 'District courts across the country are split regarding the question of whether joinder of unidentified defendants is appropriate" in cases alleging the use of BitTorrent to share copyrighted works. *Third Degree Films, Inc. v. Does 1–108*, No. DKC 11–3007, 2012 WL 1514807, at *2 (D. Md. April 27, 2012) (collecting cases). However, "[a] majority of courts ... specifically have held that the properties of BitTorrent are insufficient to support joinder." *Patrick Collins, Inc. v. Does 1–10*, No. 8:12cv00094, 2012 WL 1144980, at *5 (D. Md. Apr. 4, 2012) (collecting cases). Importantly, every case in this District has found joinder improper when based on allegations of file-sharing using BitTorrent. *See Raw Films, Ltd. v. Does 1–32*, No. 3:1 1cv532, 2011 WL 6182025, at *2 (E.D. Va. Oct. 5, 2011) (finding the allegation that defendants used BitTorrent to copy and reproduce copyrighted material insufficient to support joinder because "[m]erely committing the same type of violation in the same way does not link defendants together for purposes of joinder"); *see also Malibu Media, LLC v. John Does 1–23*, 878 F. Supp. 2d 628, 632 (E.D. Va. 2012) ("Where, as here, a plaintiff seeks to join several defendants in an action based on filesharing activity,... a plaintiff must allege facts that permit the court at least to infer some actual, concerted exchange of data between those defendants."); *Hard Drive Prods., Inc. v. Does 1– 30*, No. 2:1 1cv345,2011 WL 4915551, at *3 (E.D. Va. Oct. 17, 2011) (finding joinder improper in a case alleging that defendants used BitTorrent to copy and reproduce copyrighted material); *K–Beech, Inc. v. John Does 1–85*,

No. 3:11cv69,2011 WL 1046635, at *2 (E.D. Va. Oct. 13, 2011) (same).

The United States Court of Appeals for the Fourth Circuit has not ruled on the issue of joinder in cases involving BitTorrent file-sharing, and the only court of appeals to consider the matter found joinder improper. *See AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 998 (D.C. Cir. 2014). That court, although assuming that "two individuals who participate in the same swarm *at the same time* are part of the same series of transactions within the meaning of Rule 20(a)(2)" held that "[Plaintiff] has provided no reason to think that the Doe defendants it named in this lawsuit were ever participating in the same swarm at the same time." *Id.*

### B. CELL Fails to Allege that the Defendants Participated in the Same Transaction or Occurrence

Consistent with the majority of district courts in the country and every court in this District, the Court concludes that CELL'S allegations that the Defendants used BitTorrent to share copyrighted work do not satisfy Rule 20 requirements for joinder of defendants. CELL cannot satisfy federal rules by simply labelling, in a conclusory fashion, the Defendants' conduct as part of the "same swarm."[4] *See Malibu Media*, 878 F. Supp. 2d at 632. Without more, CELL fails to establish that the Defendants participated in the same "transaction, occurrence, or series of transactions or occurrences," as required for joinder under Rule 20. Fed. R. Civ. P. 20(a)(2)(A). Although the transaction or occurrence test of Rule 20 permits all "reasonably related claims ... to be tried in a single proceeding," *Saval*, 710 F.2d at 1031, "[m]erely committing the same type of violation in the same way does not link defendants together for purposes of joinder," *Raw Films*, 2011 WL 6182025, at *2.

Ultimately, CELL has merely alleged that the Defendants used BitTorrent to download and share pieces of the Movie. CELL has not included any facts that suggest the Defendants shared those pieces with each other, thus engaging in the same transaction or occurrence. CELL'S Complaint itself states that, given the nature of BitTorrent, even members of the "same swarm" are "stealing copyrighted material from many ... ISPs in numerous jurisdictions." (Compl. 5.) Given the numerous individuals who could have been involved in the data transfers at issue here and the lack of specific factual

allegations that these individuals shared data with each other, the Court concludes that CELL'S allegations cannot support joinder. *See Malibu Media, LLC v. Does 1-34*, No. PJM 12-1195,2012 WL 1792979, at *2 (D. Md. May 15, 2012) ("Plaintiff never asserts that Defendants downloaded or uploaded the same seed piece exclusively among themselves and thereby acted in concert. Moreover, the distributed nature of the BitTorrent network means that at least some of the Doe Defendants likely obtained the seed piece at issue from users not named in the Complaint."); *see also Media Products, Inc. v. John Does 1-44*, No. PJM 12-1292, 2012 WL 1658581, at *2 (D. Md. May 10, 2012) (same); *Third Degree Films, Inc. v. John Does 1-32*, No. PJM 12-1298, 2012 WL 1658682, at *2 (D. Md. May 10,2012) (same); *Digital Sin, Inc. v. John Does 1-88*, No. PJM 12-24, 2012 WL 1641035, at *2 (D. Md. May 8,2012) (same).[5] The Court will *sua sponte* sever the Defendants in this case.

### C. Even if CELL Properly Invoked Rule 20(a), Rule 20(b) Supports Discretionary Severance of the Defendants

*4 Even presuming that joinder were proper under Federal Rule of Civil Procedure 20(a), Rule 20(b) provides alternate grounds for this Court to sever the defendants. Federal Rule of Civil Procedure 20(b) allows a court to order separate trials to protect a party "against embarrassment, delay, expense, or other prejudice."[6] Fed. R. Civ. P. 20(b). CELL currently has one other case alleging copyright infringement by multiple John Does pending before this Court. *CELL Film Holdings, LLC v. Does 1-12*, 3:16cv750. This Court also currently has pending before it five other BitTorrent-based copyright infringement cases filed by the same attorney on behalf of another plaintiff. *LHF Prods., Inc. v. Does 1-18*, 3:16cv274; *LHF Prods., Inc. v. Does 1-24*, 3:16cv282; *LHF Prods., Inc. v. Does 1-25*, 3:16cv283; and, *LHF Prods., Inc. v. Does 1-20*, 3:16cv284; *LHF Prods., Inc. v. Does 1-10*, 3:16cv748. The pleadings and litigation process in each of these cases is substantially the same, and gives this Court cause for concern.[7] Like others, this Court becomes wary of inefficient, unmanageable, and potentially prejudicial joinder of multiple defendants. In this division, a dubious court already has commented that other plaintiffs, in a nearly identical series of cases, "seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to obtain sufficient

information to shake down the John Does." *Raw Films*, 2011 WL 6182025, at *3.

Other courts go further. Considering the potential to coerce unjust settlements alongside the fact that each defendant might require a "mini-trial" about what information it did or did not share, courts have condemned joinder because the enormous burden of trial for the joined defendants would " 'completely defeat[ ] any supposed benefit from the joinder of all Does ... and would substantially prejudice defendants and the administration of justice.' " [8] *Patrick Collins, Inc.*, 2012 WL 1144980, at *7 (second alteration in original) (quoting *Hard Drive Prods. v. Does 1-188*, 809 F. Supp. 2d 1150, 1164 (N.D. Cal. 2011)). The rationale for the $400 filing fee—revenue-sharing and curbing the filing of frivolous suits [9]—also supports discretionary severance. *Patrick Collins, Inc.*, 941 F. Supp. 2d at 166 (citing cases that severed defendants due to the substantial increase in judicial workload relative to the avoidance of up to $100,000 in filing fees). Such considerations, at least one court persuasively has found, would support discretionary severance of defendants. *Patrick Collins, Inc.*, 2012 WL 1144980, at *7 (noting that even if Rule 20(a) joinder conditions had been met, discretionary severance under Rule 20(b) would be proper because "joinder here is inefficient, raises significant manageability problems, and is unduly prejudicial to the defendants"). This record supports discretionary severance.

### III. Remaining Motions

*5 Because the Court finds joinder improper and severance and dismissal without prejudice of Doe Defendants 2-12 necessary, the Court will grant CELL'S Motion for Discovery and CELL'S Motion to Extend Time only to the extent both motions pertain to John Doe 1.

Regarding the Motion for Discovery, Federal Rule of Civil Procedure 26(b) [10] authorizes courts to alter the frequency and extent of discovery as guided by the subsections in that rule. A district court has " 'wide latitude in controlling discovery and ... its rulings will not be overturned absent a showing of clear abuse of discretion.' " *Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187,

195 (4th Cir. 2003) (quoting *Ardrey v. United Parcel Serv.*, 798 F.2d 679, 682 (4th Cir. 1986)) (alteration in original).

Pursuant to Federal Rule of Civil Procedure 26(d)(1), [11] and in the interest of justice, the Court will grant the Motion for Discovery. *See Hard Drive Prods., Inc. v. Does 1-30*, No. 2:1 lcv345,2011 WL 2634166, at *3-4 (E.D. Va. July 1,2011) (granting motion for leave to take discovery before a Rule 26(f) conference after finding plaintiff made showing of irreparable harm and need to proceed *ex parte*, when plaintiff could not determine unknown defendants' identities except through third-party subpoenas to defendants' ISPs).

Regarding the Motion to Extend, Federal Rule of Civil Procedure 4(m) governs the time for service of process. Rule 4(m) provides, in relevant part:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. *But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.*

Fed. R. Civ. P. 4(m) (emphasis added). Under Rule 4(m), if CELL demonstrates "good cause" for failing to serve Defendant John Doe 1, the Court must grant an extension of time. If, on the other hand, CELL fails to demonstrate "good cause," the Court may still, in its discretion, permit an extension of time.

The Court declines to determine whether CELL can demonstrate good cause for its failure to serve Defendant John Doe 1 within the 90-day time proscribed by the Rule. Because this case remains in an early stage of litigation, in which Defendant John Doe 1 has not filed an answer or other responsive pleading, the Court sees no prejudice that could result from a brief extension of time. Pursuant to Federal Rule of Civil Procedure 4(m), the Court will grant the Motion to Extend Time. The Court will extend the time for service of Defendant John Doe 1 until March 8, 2017.

## IV. Conclusion

For the foregoing reasons, the Court will (1) sever and dismiss without prejudice all defendants except John Doe 1; (2) grant CELL'S Motion for Discovery as to John Doe 1, (ECF No. 2); and, (3) grant CELL'S Motion to Extend as to John Doe 1, (ECF No. 6).

*6 An appropriate Order shall issue.

**All Citations**

Slip Copy, 2016 WL 7494319

Footnotes

1    28 U.S.C. § 1338(a) states in part: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." 28 U.S.C. § 1338(a).

2    The same day, CELL filed a nearly identical complaint in this Court. *CELL Film Holdings, LLC v. Does 1–12*, 3:16cv750. The same attorney who represents CELL has filed five other nearly identical complaints on behalf of another plaintiff. *LHF Prods., Inc. v. Does 1–18*, 3:16cv274; *LHF Prods., Inc. v. Does 1–24*, 3:16cv282; *LHF Prods., Inc. v. Does 1–25*, 3:16cv283; *LHF Prods., Inc. v. Does 1–20*, 3:16cv284; *LHF Prods., Inc. v. Does 1–10*, 3:16cv748.

3    Federal Rule of Civil Procedure 45 governs subpoenas. Rule 45 states in part:
     **(2) *For Other Discovery.*** A subpoena may command:
         (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
         (B) inspection of premises at the premises to be inspected.
     Fed. R. Civ. P. 45(c)(2).

4    CELL'S bald assertions that "Defendants participated in a collective and interdependent manner with other Defendants," and that "[b]y participating in the same swarm, each Defendant participated in the same transaction, occurrence [,] or series of transactions or occurrences as the other Defendants in the swarm," (Compl. 7–8), do not persuade. CELL fails to state any specific *facts* showing actual or concerted activity from which the Court could infer that joinder would be proper. *See Malibu Media*, 878 F. Supp. 2d at 632.

5    Many of the courts that found joinder improper relied in part on the length of time over which the alleged file-sharing occurred in holding that those plaintiffs' complaints failed to meet the transaction or occurrence test of Federal Rule 20. *See, e.g., AF Holdings*, 752 F.3d at 998 ("Two individuals who downloaded the same file five months apart are exceedingly unlikely to have had any interaction with one another whatsoever."); *Malibu Media*, 878 F. Supp. 2d at 632 ("[T]he spans of time [of two to three months] shown in plaintiffs' investigations make it difficult to draw the conclusion that there has been any actual exchange of data between and among the defendants in this case."). While it constitutes a factor worth considering, this Court does not find the length of time over which a defendant's use of BitTorrent occurred dispositive in determining the propriety of joinder. Regardless of the length of time over which the alleged infringement transpired, a plaintiff attempting to join multiple defendants must provide plausible factual allegations supporting an inference that those defendants participated in the same "transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A).
     Thus, although the purported copyright infringement in this case allegedly occurred over the span of one day rather than several months, CELL still fails to "allege facts that permit the [C]ourt at least to infer some actual, concerted exchange of data" among the Defendants in this case. *See Malibu Media*, 878 F. Supp. 2d at 632. CELL asserts that all the Defendants were members of the "same swarm," but, as with the cases discussed above, CELL never alleges facts that indicate any direct exchange of data among *these twelve individuals.*

6    Rule 20(b) grants a court the discretion to sever parties as follows: "The court may issue orders—including an order for separate trials—to protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against the party." Fed. R. Civ. P. 20(b).

7    In each of the cases brought by LHF, LHF has sought, and the Court has granted, early discovery to determine the identity of the alleged infringers. *LHF Prods., Inc. v. Does 1–18*, 3:16cv274; *LHF Prods., Inc. v. Does 1–24*, 3:16cv282; *LHF Prods., Inc. v. Does 1–25*, 3:16cv283; *LHF Prods., Inc. v. Does 1–20*, 3:16cv284. In identical filings in three of its cases, LHF has sought additional time "to complete settlements where possible and service of other [defendants] that do not settle." (*LHF v. Does 1–18*, 3:16cv274 Mot. Extend 2, ECF No. 11; *LHF v. Does 1–24*, 3:16cv282 Mot. Extend 2, ECF No. 11; *LHF v. Does 1–20*, 3:16cv284 Mot. Extend 2, ECF No. 11.)

8    This Court does not see bad faith in this case. But this division has already seen one series of BitTorrent cases brought by different counsel where *pro se* defendants sought refuge from aggressive settlement techniques. *See Raw Films*, 2011 WL 6182025, at *3 (ordering plaintiff to show cause why conduct, including directly contacting defendants and demanding payment in settlement of asserted copyright infringement claims, does not violate Federal Rule of Civil Procedure 11).

   Any court must be mindful of litigation patterns or practices that could cross appropriate lines, especially when it involves unrepresented parties. *See* Fed. R. Civ. P. 11(b) ("By presenting to the court a pleading, written motion, or other paper ... an attorney or unrepresented party certifies that ... it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation ...."); Fed. R. Civ. P. 11(c) ("If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.").

9    "The filing fee, which is required under 28 U.S.C. § 1914(a), serves two salutary purposes. First, it is a revenue sharing measure. Second, § 1914(a) acts as a threshold barrier, albeit a modest one, against the filing of frivolous or otherwise meritless lawsuits." *Patrick Collins, Inc. v. John Does 1–38*, 941 F. Supp. 2d 153, 166 (D. Mass. 2013) (internal citations and quotation marks omitted).

10   Rule 26(b) states in part: "**(b) Discovery Scope and Limits. (1)** *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows:...."

11   Federal Rule of Civil Procedure 26(d)(1) states, in pertinent part: "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except ... when authorized ... by court order." Fed. R. Civ. P. 26(d)(1).

---

End of Document                                              © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 7422057
United States District Court,
E.D. Virginia,
**Richmond Division.**

LHF PRODUCTIONS, INC., Plaintiff,
v.
John DOES 1–10, Defendants.

Civil Action No. 3:16cv748
|
Signed 12/22/2016

**Attorneys and Law Firms**

Dale R. Jensen, Dale Jensen PLC, Staunton, VA, for Plaintiff.

**MEMORANDUM OPINION**

M. Hannah Lauck, United States District Judge

*1 This matter comes before the Court on two motions: (1) the Motion for Discovery for Leave to Serve Third Party Subpoenas (the "Motion for Discovery") filed by LHF Productions, Inc. ("LHF"), (ECF No. 2); and, (2) the First Motion to Extend Time Pursuant to Federal Rule of Civil Procedure 4(m) (the "Motion to Extend") filed by LHF, (ECF No. 6). The Court exercises jurisdiction pursuant to 28 U.S.C. § 1338(a).[1] The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will: (1) sever and dismiss without prejudice all defendants except John Doe 1; (2) grant the Motion for Discovery as to John Doe 1; and, (3) grant the Motion to Extend as to John Doe 1.

**I. Factual and Procedural Background**

**A. Allegations in the Complaint**

On September 9, 2016, LHF filed its Complaint for Copyright Infringement against John Does 1–10 in this Court.[2] (ECF No. 1.) The Complaint listed 10 John Doe defendants ("the Defendants"), identified by their Internet Protocol ("IP") addresses, who had allegedly infringed on LHF's copyrighted work, the motion picture *London Has Fallen* ("the Movie"), in violation of the United States Copyright Act, 17 U.S.C. §§ 101, *et seq.* To establish personal jurisdiction in this District, LHF used "geolocation technology" to trace the IP addresses of all the Defendants to a point of origin within this District.

The Complaint alleges that, using a network called a "BitTorrent protocol" ("BitTorrent"), the Defendants "reproduced, distributed[,] and offered to distribute" the Movie without LHF's consent or permission. (Compl. 2 - 3.) The Defendants' alleged use of BitTorrent occurred over the span of one day: June 4, 2016. LHF contends that BitTorrent differs from a Peer-to-Peer protocol in that it facilitates data-sharing among individuals and "makes even small computers with low bandwidth capable of participating in large data transfers." (*Id.* at 2.) In BitTorrent, the initial shared file is called a "seed," and other users on the network are called "peers." When peers connect to the network and request the seed, they receive different pieces of the seed data from other peers who have already downloaded the file. Each peer thus "becomes a part of the network from which the file can be downloaded." (*Id.*) This group of peers is called a "swarm." LHF claims that with BitTorrent, "every downloader [is] also an uploader" of the shared file, and every member of a swarm serves as a source for the seed file, so long as the member remains online at the time other peers download the file. (*Id.* at 2–3.) Furthermore, "because of the nature of the swarm downloads ... every [peer] is [downloading seed data] from many [ISPs] in numerous jurisdictions." (*Id.* at 3.) Uploading one seed file to a BitTorrent network "can result in nearly instantaneous worldwide distribution of that single [file] to a limitless number of people." (*Id.*)

*2 LHF asserts that "each Defendant deliberately participated in a swarm and/or reproduced and/or distributed the same seed file" of the Movie, and thereby "participated in a collective and interdependent manner with other Defendants" to infringe LHF's copyright. (*Id.* at 5–6.) LHF states that because all the Defendants participated in the "same swarm" using BitTorrent, all the Defendants participated in the "same transaction, occurrence [,] or series of transactions or occurrences as the other Defendants in the swarm." (*Id.* at 6.) LHF seeks declaratory, injunctive, and monetary relief.

**B. The Motion for Discovery**

On October 31, 2016, LHF filed the Motion for Discovery. LHF seeks leave to serve limited discovery on the Internet Service Providers ("ISPs") from which the Defendants obtain Internet access in order to determine the Defendants' identities. In support of the Motion for Discovery, LHF asserts, *inter alia*, that: (1) good cause exists to grant the motion; (2) LHF seeks limited and specific discovery; (3) no alternative means exists to learn Defendants' identities; (4) LHF requires discovery to advance its asserted claims; and, (5) LHF's interest in knowing Defendants' identities outweighs Defendants' interests in remaining anonymous. (*Id.* at 6–13.) LHF requests the Court's permission to "serve a Rule 45[3] subpoena on the ISPs it has identified as of this date ... so that the ISPs can divulge the true name and address of each Doe Defendant that Plaintiff has identified to date ...." (Mot. Disc. 15.)

### C. The Motion to Extend Time

On December 7, 2016, LHF filed the Motion to Extend, requesting the Court to extend time to serve the Defendants. LHF requests an extension of ninety days "until March 8, 2017[,] to complete identification, joinder, and service of the defendants in this case." (Mot. Extend Time 1.)

### II. The Court Will *Sua Sponte* Sever All Defendants Except John Doe 1

#### A. Legal Standard for Joinder of Defendants

Federal Rule of Civil Procedure 20(a)(2) allows joinder of defendants if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and[,] (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Although misjoinder cannot undergird the dismissal of an action, "[o]n motion or *on its own*, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21 (emphasis added).

Rule 20 supports the "broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties[,] and remedies is strongly encouraged." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966). "[T]he rule should be construed in light of its purpose, which

is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits.'" *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (quoting *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974)). The transaction or occurrence test of Rule 20 generally proceeds on a case by case basis, and permits all "reasonably related claims ... to be tried in a single proceeding." *Id.* If the joinder of parties or claims will result in prejudice, expense, or delay, the Court has discretion to deny joinder. *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 n.5 (4th Cir. 2007). The propriety of joinder rests within the sound discretion of the trial court. *Saval*, 710 F.2d at 1031.

**\*3** "District courts across the country are split regarding the question of whether joinder of unidentified defendants is appropriate" in cases alleging the use of BitTorrent to share copyrighted works. *Third Degree Films, Inc. v. Does 1–108*, No. DKC 11–3007, 2012 WL 1514807, at \*2 (D. Md. April 27, 2012) (collecting cases). However, "[a] majority of courts ... specifically have held that the properties of BitTorrent are insufficient to support joinder." *Patrick Collins, Inc. v. Does 1–10*, No. 8:12cv00094, 2012 WL 1144980, at \*5 (D. Md. Apr. 4, 2012) (collecting cases). Importantly, every case in this District has found joinder improper when based on allegations of file-sharing using BitTorrent. *See Raw Films, Ltd. v. Does 1–32*, No. 3:11cv532, 2011 WL 6182025, at \*2 (E.D. Va. Oct. 5, 2011) (finding the allegation that defendants used BitTorrent to copy and reproduce copyrighted material insufficient to support joinder because "[m]erely committing the same type of violation in the same way does not link defendants together for purposes of joinder"); *see also Malibu Media, LLC v. John Does 1–23*, 878 F. Supp. 2d 628, 632 (E.D. Va. 2012) ("Where, as here, a plaintiff seeks to join several defendants in an action based on filesharing activity, ... a plaintiff must allege facts that permit the court at least to infer some actual, concerted exchange of data between those defendants."); *Hard Drive Prods., Inc. v. Does 1–30*, No. 2:11cv345, 2011 WL 4915551, at \*3 (E.D. Va. Oct. 17, 2011) (finding joinder improper in a case alleging that defendants used BitTorrent to copy and reproduce copyrighted material); *K-Beech, Inc. v. John Does 1–85*, No. 3:11cv469, 2011 WL 10646535, at \*2 (E.D. Va. Oct. 13, 2011) (same).

The Fourth Circuit has not ruled on the issue of joinder in cases involving BitTorrent file-sharing, and the only court

of appeals to consider the matter found joinder improper. *See AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 998 (D.C. Cir. 2014). That court, although assuming that "two individuals who participate in the same swarm *at the same time* are part of the same series of transactions within the meaning of Rule 20(a)(2)" held that "[Plaintiff] has provided no reason to think that the Doe defendants it named in this lawsuit were ever participating in the same swarm at the same time." *Id.*

### B. LHF Fails to Allege that the Defendants Participated in the Same Transaction or Occurrence

Consistent with the majority of district courts in the country and every court in this District, the Court concludes that LHF's allegations that the Defendants used BitTorrent to share copyrighted work do not satisfy Rule 20 requirements for joinder of defendants. LHF cannot satisfy federal rules by simply labelling, in a conclusory fashion, the Defendants' conduct as part of the "same swarm." [4] *See Malibu Media*, 878 F. Supp. 2d at 632. Without more, LHF fails to establish that the Defendants participated in the same "transaction, occurrence, or series of transactions or occurrences," as required for joinder under Rule 20. Fed. R. Civ. P. 20(a)(2)(A). Although the transaction or occurrence test of Rule 20 permits all "reasonably related claims ... to be tried in a single proceeding," *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983), "[m]erely committing the same type of violation in the same way does not link defendants together for purposes of joinder," *Raw Films*, 2011 WL 6182025, at *2.

Ultimately, LHF has merely alleged that the Defendants used BitTorrent to download and share pieces of the Movie. LHF has not included any facts that suggest the Defendants shared those pieces with each other, thus engaging in the same transaction or occurrence. LHF's Complaint itself states that, given the nature of BitTorrent, even members of the "same swarm" are "stealing copyrighted material from many ... ISPs in numerous jurisdictions." (Compl. 3.) Given the numerous individuals who could have been involved in the data transfers at issue here and the lack of specific factual allegations that these individuals shared data with each other, the Court concludes that LHF's allegations cannot support joinder. *See Malibu Media, LLC v. Does 1-34*, No. PJM 12-1195, 2012 WL 1792979, at *2 (D. Md. May 15, 2012) ("Plaintiff never asserts

that Defendants downloaded or uploaded the same seed piece exclusively among themselves and thereby acted in concert. Moreover, the distributed nature of the BitTorrent network means that at least some of the Doe Defendants likely obtained the seed piece at issue from users not named in the Complaint."); *see also Media Products, Inc. v. John Does 1-44*, No. PJM 12-1292, 2012 WL 1658581, at *2 (D. Md. May 10, 2012) (same); *Third Degree Films, Inc. v. John Does 1-32*, No. PJM 12-1298, 2012 WL 1658682, at *2 (D. Md. May 10, 2012) (same); *Digital Sin, Inc. v. John Does 1-88*, No. PJM 12-24, 2012 WL 1641035, at *2 (D. Md. May 8, 2012) (same). [5] The Court will *sua sponte* sever the Defendants in this case.

### C. Even if LHF Properly Invoked Rule 20(a), Rule 20(b) Supports Discretionary Severance of the Defendants

*4 Even presuming that joinder were proper under Federal Rule of Civil Procedure 20(a), Rule 20(b) provides alternate grounds for this Court to sever the defendants. Federal Rule of Civil Procedure 20(b) allows a court to order separate trials to protect a party "against embarrassment, delay, expense, or other prejudice." [6] Fed. R. Civ. P. 20(b). LHF currently has four other cases alleging copyright infringement by multiple John Does pending before this Court. *LHF Prods., Inc. v. Does 1-18*, 3:16cv274; *LHF Prods., Inc. v. Does 1-24*, 3:16cv282; *LHF Prods., Inc. v. Does 1-25*, 3:16cv283; and, *LHF Prods., Inc. v. Does 1-20*, 3:16cv284. In each of those cases, LHF has sought, and the Court has granted, early discovery to determine the identity of the alleged infringers. *LHF Prods., Inc. v. Does 1-18*, 3:16cv274; *LHF Prods., Inc. v. Does 1-24*, 3:16cv282; *LHF Prods., Inc. v. Does 1-25*, 3:16cv283; *LHF Prods., Inc. v. Does 1-20*, 3:16cv284. In identical filings in three of those cases, LHF has sought additional time "to complete settlements where possible and service of other [defendants] that do not settle." (*LHF v. Does 1-18*, 3:16cv274 Mot. Extend 2, ECF No. 11; *LHF v. Does 1-24*, 3:16cv282 Mot. Extend 2, ECF No. 11; *LHF v. Does 1-20*, 3:16cv284 Mot. Extend 2, ECF No. 11.)

Like others, this Court becomes wary of statements about pre-answer settlement when plaintiffs sue under a BitTorrent-based copyright claim. In this division, a dubious court already has commented that other plaintiffs, in a nearly identical series of cases, "seemingly have no interest in actually litigating the cases, but rather simply have used the Court and its subpoena powers to

obtain sufficient information to shake down the John Does." *Raw Films*, 2011 WL 6182025, at *3.

Other courts go further. Considering the potential to coerce unjust settlements alongside the fact that each defendant might require a "mini-trial" about what information it did or did not share, courts have condemned joinder because the enormous burden of trial for the joined defendants would " 'completely defeat[ ] any supposed benefit from the joinder of all Does ... and would substantially prejudice defendants and the administration of justice.' "[7] *Patrick Collins, Inc.*, 2012 WL 1144980, at *7 (second alteration in original) (quoting *Hard Drive Prods. v. Does 1-188*, 809 F. Supp. 2d 1150, 1164 (N.D. Cal. 2011)). The rationale for the $400 filing fee—revenue-sharing and curbing the filing of frivolous suits[8]—also supports discretionary severance. *Patrick Collins, Inc.*, 941 F. Supp. 2d at 166 (citing cases that severed defendants due to the substantial increase in judicial workload relative to the avoidance of up to $100,000 in filing fees). Such considerations, at least one court persuasively has found, would support discretionary severance of defendants. *Patrick Collins, Inc.*, 2012 WL 1144980, at *7 (noting that even if Rule 20(a) joinder conditions had been met, discretionary severance under Rule 20(b) would be proper because "joinder here is inefficient, raises significant manageability problems, and is unduly prejudicial to the defendants"). This record supports discretionary severance.

### III. Remaining Motions

*5  Because the Court finds joinder improper and severance of Doe Defendants 2-10 necessary, the Court will grant the Motion for Discovery and the Motion to Extend Time only to the extent both motions pertain to John Doe 1.

Regarding the Motion for Discovery, Federal Rule of Civil Procedure 26(b)[9] authorizes courts to alter the frequency and extent of discovery as guided by the subsections in that rule. A district court has " 'wide latitude in controlling discovery and ... its rulings will not be overturned absent a showing of clear abuse of discretion.' " *Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187, 195 (4th Cir. 2003) (quoting *Ardrey v. United Parcel Serv.*, 798 F.2d 679, 682 (4th Cir. 1986)) (alteration in original).

Pursuant to Federal Rule of Civil Procedure 26(d)(1),[10] and in the interest of justice, the Court will grant the Motion for Discovery. *See Hard Drive Prods., Inc. v. Does 1-30*, No. 2:11cv345, 2011 WL 2634166, at *3-4 (E.D. Va. July 1, 2011) (granting motion for leave to take discovery before a Rule 26(f) conference after finding plaintiff made showing of irreparable harm and need to proceed *ex parte*, when plaintiff could not determine unknown defendants' identities except through third-party subpoenas to defendants' ISPs).

Regarding the Motion to Extend, Federal Rule of Civil Procedure 4(m) governs the time for service of process. Rule 4(m) provides, in relevant part:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. *But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.*

Fed. R. Civ. P. 4(m) (emphasis added). Under Rule 4(m), if LHF demonstrates "good cause" for failing to serve Defendant John Doe 1, the Court must grant an extension of time. If, on the other hand, LHF fails to demonstrate "good cause," the Court may still, in its discretion, permit an extension of time.

The Court declines to determine whether LHF can demonstrate good cause for its failure to serve Defendant John Doe 1 within the 90-day time proscribed by the Rule. Because this case remains in an early stage of litigation, in which Defendant John Doe 1 has not filed an answer or other responsive pleading, the Court sees no prejudice that could result from a brief extension of time. Pursuant to Federal Rule of Civil Procedure 4(m), the Court will grant the Motion to Extend Time. The Court will extend the time for service of Defendant John Doe 1 until March 8, 2017.

### IV. Conclusion

For the foregoing reasons, the Court will (1) sever and dismiss without prejudice all defendants except John Doe 1; (2) grant the Motion for Discovery as to John Doe 1, (ECF No. 2); and, (3) grant the Motion to Extend as to John Doe 1, (ECF No. 6).

*6 An appropriate Order shall issue.

**All Citations**

Slip Copy, 2016 WL 7422657, 121 U.S.P.Q.2d 1127

Footnotes

1   28 U.S.C. § 1338(a) states in part: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." 28 U.S.C. § 1338(a).

2   LHF previously has filed four other nearly identical complaints in this Court. *LHF Prods., Inc. v. Does 1–18*, 3:16cv274; *LHF Prods., Inc. v. Does 1–24*, 3:16cv282; *LHF Prods., Inc. v. Does 1–25*, 3:16cv283; and, *LHF Prods., Inc. v. Does 1–20*, 3:16cv284.

3   Federal Rule of Civil Procedure 45 governs subpoenas. Rule 45 states in part:

   **(2) For Other Discovery.** A subpoena may command:

   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

   **(B)** inspection of premises at the premises to be inspected.

   Fed. R. Civ. P. 45(c)(2).

4   LHF's bald assertions that "Defendants participated in a collective and interdependent manner with other Defendants," and that "[b]y participating in the same swarm, each Defendant participated in the same transaction, occurrence[,] or series of transactions or occurrences as the other Defendants in the swarm," (Compl. 5–6), do not persuade. LHF fails to state any specific *facts* showing actual or concerted activity from which the Court could infer that joinder would be proper. *See Malibu Media*, 878 F. Supp. 2d at 632.

5   Many of the courts that found joinder improper relied in part on the length of time over which the alleged file-sharing occurred in holding that those plaintiffs' complaints failed to meet the transaction or occurrence test of Federal Rule 20. *See, e.g., AF Holdings*, 752 F.3d at 998 ("Two individuals who downloaded the same file five months apart are exceedingly unlikely to have had any interaction with one another whatsoever."); *Malibu Media*, 878 F. Supp. 2d at 632 ("[T]he spans of time [of two to three months] shown in plaintiffs' investigations make it difficult to draw the conclusion that there has been any actual exchange of data between and among the defendants in this case."). While it constitutes a factor worth considering, this Court does not find the length of time over which a defendant's use of BitTorrent occurred dispositive in determining the propriety of joinder. Regardless of the length of time over which the alleged infringement transpired, a plaintiff attempting to join multiple defendants must provide plausible factual allegations supporting an inference that those defendants participated in the same "transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A).

   Thus, although the purported copyright infringement in this case allegedly occurred over the span of one day rather than several months, LHF still fails to "allege facts that permit the [C]ourt at least to infer some actual, concerted exchange of data" among the Defendants in this case. *See Malibu Media*, 878 F. Supp. 2d at 632. LHF asserts that all the Defendants were members of the "same swarm," but, as with the cases discussed above, LHF never alleges facts that indicate any direct exchange of data among *these ten individuals*.

6   Rule 20(b) grants a court the discretion to sever parties as follows: "The court may issue orders—including an order for separate trials—to protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against the party." Fed. R. Civ. P. 20(b).

7   This Court does not see bad faith in this case. But this division has already seen one series of BitTorrent cases brought by different counsel where *pro se* defendants sought refuge from aggressive settlement techniques. *See Raw Film.*, 2011 WL 6182025, at *3 (ordering plaintiff to show cause why conduct, including directly contacting defendants and demanding payment in settlement of asserted copyright infringement claims, does not violate Federal Rule of Civil Procedure 11).

   Any court must be mindful of litigation patterns or practices that could cross appropriate lines, especially when it involves unrepresented parties. *See* Fed. R. Civ. P. 11(b) ("By presenting to the court a pleading, written motion, or other paper ... an attorney or unrepresented party certifies that ... it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation ...."); Fed. R. Civ. P. 11(c) ("If, after notice and a

reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.").

8      "The filing fee, which is required under 28 U.S.C. § 1914(a), serves two salutary purposes. First, it is a revenue sharing measure. Second, § 1914(a) acts as a threshold barrier, albeit a modest one, against the filing of frivolous or otherwise meritless lawsuits." *Patrick Collins, Inc. v. John Does 1–38*, 941 F. Supp. 2d 153, 166 (D. Mass. 2013) (internal citations and quotation marks omitted).

9      Rule 26(b) states in part: "**(b) Discovery Scope and Limits. (1)** *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: ...."

10     Federal Rule of Civil Procedure 26(d)(1) states, in pertinent part: "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except ... when authorized ... by court order." Fed. R. Civ. P. 26(d)(1).

---

End of Document                                          © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 3430241
Only the Westlaw citation is currently available.
United States District Court,
N.D. California.

Nicholas Assef, et al., Plaintiffs,

v.

Does 1–10, Defendant.

Case No. 15–cv–01960–MEJ

|

Signed May 28, 2015

**Attorneys and Law Firms**

Emily Fenner Evitt, Mitchell Silberberg and Knupp LLP,
Los Angeles, CA, for Plaintiffs.

### ORDER GRANTING IN PART EX PARTE APPLICATION FOR LEAVE TO TAKE IMMEDIATE DISCOVERY

MARIA–ELENA JAMES, United States Magistrate Judge

### INTRODUCTION

*1   In this trademark infringement case, Plaintiffs Nicholas Assef and Lincoln Crowne & Company Pty Ltd ("Plaintiffs") allege that unknown persons ("Defendants") created an infringing blog hosted by Google Inc.'s "Slogger" service. Pending before the Court is Plaintiffs' Ex Parte Application for Leave to Take Immediate Discovery, in which Plaintiffs seek leave to serve a subpoena on Google to learn Defendants' identities. Dkt. No. 8. Having considered Plaintiffs' position and the relevant legal authority, the Court **GRANTS IN PART** Plaintiffs' Application for the reasons below.

### BACKGROUND

Lincoln Crowne is an Australian investment bank that provides advice on corporate transactions and strategic engagements. Compl. ¶¶ 6–7, Dkt. No. 1. Assef is the founder and executive director of Lincoln

Crowne. *Id.* ¶¶ 7, 9. Lincoln Crowne owns the following trademarks: Lincoln Crowne & Company (USPTO Reg. No. 4107955); Lincoln Crowne & Company (Australian Reg. No. 1423961); Lincoln Crowne (Australian Reg. No. 1423960); lincolncrowne (Australian Reg. No. 142175). *Id.* ¶ 7. Lincoln Crowne also owns and operates a website located at lincolncrowne.com. *Id.* ¶ 8.

Plaintiffs allege that Defendants created an infringing and defamatory blog located at www.lincolncrowne.blogspot.com ("the Blog"). *Id.* ¶ 11; Ex. A. The Blog bears the heading, "Beware Lincoln Crowne & Company" and the subheading "Warning Warning Warning—Nick Assef." *Id.* ¶ 12. The text of the Blog includes personal attacks on Assef, as well as attacks on Lincoln Crowne. *Id.* Defendants used Plaintiffs' "Lincoln Crowne" trademark as their Blogger username, and thus "LINCOLNCROWNE" appears both in the Blog's URL and on the Blog itself under the heading "About Me." *Id.* Defendants had no authorization to use the Lincoln Crowne trademarks. *Id.* Defendants have no affiliation with Plaintiffs. *Id.* ¶ 13. Rather, Plaintiffs believe that Defendants are individuals who were upset about the performance of a private investment and posted false statements on the Blog in retaliation. *Id.*

On January 7, 2014, Plaintiffs filed a defamation lawsuit against Google in the Supreme Court of New South Wales, Australia. *Id.* ¶ 15. In response to the Australian lawsuit, on or about January 18, 2014, Google removed the Blog across its Blogger domains. *Id.* However, in or around September 2014, Plaintiffs discovered that Google had reinstated the Blog in the .com domain. *Id.* ¶ 16. Thus, although the Blog is no longer available at the Australia-specific URL www.lincolncrowne.blogspot.com/au, it is viewable at the primary URL www.lincolncrowne.blogspot.com. *Id.* Despite the Australian litigation, Plaintiffs state that Google refuses to take down the Blog without an order from a United States court. *Id.* ¶ 17.

Plaintiffs filed this lawsuit on April 30, 2015 to seek redress for Defendants' alleged infringement. Because Defendants' identities are unknown, Plaintiffs have not been able to attempt service and have not yet taken any further action in this litigation. Evitt Decl. ¶ 4, Dkt. No. 8–1. On May 27, 2015, Plaintiffs filed the present Application, seeking discovery to determine information

about the individuals who created the Blog. Namely, Plaintiffs seek to obtain from Google:

> *2 • Documents sufficient to identify the names, addresses, telephone numbers, and email addresses of the individuals and/or entities who created, own and operate the Blog;

> • Documents sufficient to identify the IP [Internet Protocol] addresses used to create, operate and access the Blog; and

> • Documents relating to the individuals and/or entities who created, own and operate the Blog.

App. at 5. Plaintiffs maintain that this information will allow them either to amend their Complaint to name the Defendants, or to determine what additional subpoenas will be necessary to determine Defendants' identities. *Id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 26(d) provides, in part, that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except ... when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d) (1). A court may order expedited discovery under Rule 26(d) for good cause, which may be found "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc. v. Tokyo Elec. Am., Inc.,* 208 F.R.D. 273, 276 (N.D. Cal. 2002). Good cause "is frequently found in cases involving claims of infringement and unfair competition." *Id.* The court must perform this evaluation in light of "the entirety of the record to date and the *reasonableness* of the request in light of all the surrounding circumstances." *Id.* at 275 (citation & quotation marks omitted) (emphasis in original).

Rule 45 governs discovery of non-parties by subpoena.

## DISCUSSION

As a preliminary matter, the Court notes that the use of "Doe" to identify a defendant is not favored. *Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir. 1980). But it is appropriate "where the identity of alleged defendants

will not be known prior to the filing of a complaint." *Id.* Here, because Defendants anonymously operate the Blog, Plaintiffs have been unable to determine their true identities. Evitt Decl. ¶ 3. "In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie,* 629 F.2d at 642.

As noted above, Plaintiffs seek to obtain three categories of information. As to Defendants' contact information, it does not appear that Plaintiffs have any other way to obtain this most basic information, which is necessary to advance the lawsuit by enabling Plaintiffs to effect service of process. Evitt Decl. ¶ 3. "Postponing disclosure of information until the normal course of discovery is not an option in the instant case because, without disclosure of Defendants' names and contact information, the litigation cannot proceed to that stage." *UMG Recordings,* 2006 WL 1343597 at *1 (citing *Semitool,* 208 F.R.D. at 276). Thus, good cause exists for discovery of Defendants' names, addresses, telephone numbers, and email addresses.

As to IP addresses, expedited discovery is appropriate because the addresses can assist in the identification of Doe defendants. *See Dhillon v. Does 1–10,* 2013 WL 5367783, at *2 (N.D. Cal. Sep. 25, 2013) (permitting plaintiff to serve subpoena on Google to obtain identity of Doe defendants, including IP addresses used to create and maintain accounts); *Big Ticket Television, Inc. v. Zaragosa,* 2013 WL 3833075, at *1 (S.D.N.Y. July 16, 2013) (permitting immediate discovery, including IP addresses, from Google to "enable Plaintiffs to ascertain the identities of the Defendants or to effectuate service upon them."); *Bloomberg, L.P. v. John Does 1–4,* 2013 WL 4780036, at *1 (S.D.N.Y. June 26, 2013) (denying motion for reconsideration in trademark infringement case where the court had previously permitted plaintiffs leave to serve Google with a Rule 45 subpoena seeking information, including IP addresses, to identify Doe defendants). Thus, good cause exists to permit discovery of the IP addresses used to create, operate, and access the Blog.

*3 As to the third category, "[d]ocuments relating to the individuals and/or entities who created, own and operate the Blog," the Court finds that Plaintiffs have failed to establish good cause for such broad discovery at this early stage in the proceedings. If Plaintiffs obtain Defendants'

contact information, it is not clear why all documents "relating to" Defendants would also be necessary to effect service of process. Accordingly, the Court finds that Plaintiffs have shown a need for expedited discovery of Defendants' names, addresses, telephone numbers, and email addresses, as well as the IP address used to create the Blog, but not other documents "relating to" Defendants.

The Court also finds that Plaintiffs' infringement claims are likely to survive a motion to dismiss. Trademark infringement requires Plaintiffs to show that Defendants used (1) a reproduction, counterfeit, copy or colorable imitation of their registered trademark; (2) without Plaintiffs' consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution or advertising of any goods; (5) where such use is likely to cause confusion, or to cause a mistake or to deceive. 15 U.S.C. § 1114(1)(a); *Brookfield Commc'n v. W. Coast Entm't*, 174 F.3d 1036, 1046–47 (9th Cir. 1999). In their Complaint, Plaintiffs allege that they own all right, title, and interest in the Lincoln Crowne Trademarks and www.lincolncrowne.com website. Compl. ¶ 21. They further allege that Defendants created the Blog, which has a username and URL that are identical or confusingly similar to Plaintiffs' trademarks, without Plaintiff's authorization, and that Defendants' unauthorized use of the trademarks is likely to cause confusion, mistake, or deception as to its association with Plaintiffs. *Id.* ¶¶ 22–23. Thus, Plaintiffs plead all necessary elements of a trademark cause of action, and they have shown good cause exists for the need to issue a Rule 45 subpoena. *See UMG Recordings, Inc. v. Doe*, 2008 WL 4104214, at *4 (N.D. Cal. Sep. 3, 2008) ("In Internet infringement cases, courts routinely find good cause exists to issue a Rule 45 subpoena to discover a Doe defendant's identity, prior to a Rule 26(f) conference, where a plaintiff makes a prima facie showing of infringement [and] and there is no other way to identify the Doe defendant...."); *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 579–80 (N.D. Cal. 1999) (authorizing plaintiff to conduct pre-service discovery to ascertain the identities of Doe defendants accused of committing trademark infringement over the Internet).

Balancing this need against "the prejudice to the responding party," *Semitool*, 208 F.R.D. at 276, the Court finds the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to Google. Looking first at "the administration of justice," without expedited discovery, Plaintiffs cannot identify Defendants, which means this matter cannot proceed forward, and Plaintiffs will continue to suffer ongoing, continuous injury due to Defendants' illegal activities. As to the prejudice to Google, there is none, as the Rule 45 subpoena will only identify Defendants' contact information in order to advise them of suit, and possibly resolve this matter without additional litigation. Further, as stated in the Conclusion below, protective measures shall be implemented to avoid undue prejudice to Defendants and protect their privacy.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Ex Parte Application for Leave to Take Immediate Discovery, as modified herein. Specifically,

1. Plaintiffs may serve a subpoena pursuant to Federal Rule of Civil Procedure 45 on Google to obtain the Defendants' names, addresses, telephone numbers, and email addresses, as well as documents sufficient to identify the IP addresses used to create, operate, and access the Blog (the "Identifying Information"). Plaintiffs must serve on Google a copy of this Order attached to the subpoena.

*4   2. Google shall have 21 days from service of the subpoena to serve Defendants with a copy of the subpoena and this Order. Google may serve Defendants using any reasonable means, including written notice sent to the last known address, transmitted either by first-class mail or via overnight service.

3. Google and Defendants shall each have 21 days from the date of service upon him, her, or it to file any motions in this Court contesting the subpoena (including a motion to quash or modify the subpoena). If neither Google nor Defendants moves or objects within these time periods, Google shall have 7 days to serve the Identifying Information on Plaintiffs.

4. If any motions are brought to quash or otherwise object to the subpoena, Google shall preserve the Identifying Information pending resolution of such motions.

Any information disclosed to Plaintiffs in response to the subpoena may be used solely for the purpose of protecting their rights as set forth in the Complaint.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 3430241

End of Document

© 2017 Thomson Reuters. No claim to original U.S. Government Works.