## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

THE REYBOLD GROUP OF    )
COMPANIES, INC.,    )
    )
    Plaintiff,    )
    )
    v.    )    Civil Action No. 17-810-VAC-CJB
    )
JOHN DOES 1-20,    )
    )
    Defendants.    )

## MEMORANDUM ORDER

Plaintiff The Reybold Group of Companies, Inc. ("Plaintiff") filed this action against anonymous online posters John Does 1-20 ("Defendants") alleging federal causes of action pursuant to the Lanham Act, 15 U.S.C. § 1051, *et seq.*, as well as state law claims of trademark dilution by tarnishment, injurious falsehood, and defamation. (D.I. 1) Presently pending before the Court is Plaintiff's *Ex Parte* Motion for Expedited Discovery (the "Motion"), which seeks to obtain such discovery in order to identify those Defendants who have posted the allegedly false and defamatory information. (D.I. 5) More specifically, Plaintiff requests leave to issue a third-party subpoena to ApartmentRatings.com that seeks, *inter alia*, the internet protocol addresses ("IP addresses") from which the online postings originated. (D.I. 6 at 2) Plaintiff would then subpoena the relevant internet service providers ("ISPs") associated with those IP addresses, in order to identify any name, address, telephone number, email address, and/or payment method associated with the IP addresses. (D.I. 5-1)

For the reasons set forth below, the Court DENIES Plaintiff's Motion.

## I.    BACKGROUND

Plaintiff is a Delaware corporation and is the manager and owner of the St. Andrews

Apartment Complex ("St. Andrews"), located in Bear, Delaware. (D.I. 1 at ¶¶ 1, 7, 9; D.I. 6 at 2)

Defendants are unknown persons that have posted information about St. Andrews on

ApartmentRatings.com—a website which provides a forum for users to post and review ratings

and comments concerning the quality of apartments. (D.I. 1 at ¶¶ 2, 13; D.I. 6 at 2)

Plaintiff filed its Complaint on June 23, 2017. (D.I. 1)  The Complaint includes reference

to 14 different "comments" that Defendants have posted on ApartmentRatings.com after

February 1, 2017. (*Id.* at ¶ 16)  Because the substantive content of these online postings is

relevant to the analysis below, the Court will here provide a representative sample of the

comments listed in the Complaint:

> (b)  **anonymous**
> I would in no way recommend this complex.  Apartments are old,
> lawns are always trash covered, cigarette butts and dog crap
> everywhere.  Trash areas are always a mess.  Maintenance stuff
> never gets done.  When it does they have to come back 3 or 4
> times.  My rent goes up every year and new people get deals, yet I
> get nothing for staying.  I'm out of here this year.  There is tons of
> new stuff around that is cheaper.  Rock wood, Emblem, check
> these out.  So much nicer for less money.  Also, my UPS and
> FedEx packages are always getting stolen from my door and they
> don't do anything about it.  Good Riddance $h1t Andrews.
>
> Added Feb 01, 2017 . . .
>
> (e)  **anonymous**
> I've been living at this place with bad wiring for months now and
> no one seems to care.  I have several outlets that spark when I use
> them, some that don't work at all, and one that only works when
> you tap on it.  The wiring in my home is obviously not right.  I
> have been begging them to fix it and they keep telling me they're
> trying to get an electrician out to look at it but no one ever shows.
> I have children and I should feel safe having them live her[e] but I
> don't.  But let me pay rent one day late and they're all over me.  I
> hate this place.

2

Added Mar 10, 2017 . . .

(m)    **Anonymous - Resident**

I have lived here for about 6 months and I have to say I've never wanted to move out of a place so badly. Maintenance enters without asking, and the level of drug use in this complex is mind blowing. When I'm not smelling marijuana, I'm watching vehicles drive up, exchange money for small packages, and drive off. I've seen the evidence of drug use on the ground and my son has been approached twice and asked if he wants to buy weed. They have security personnel but I don't know why – they aren't stopping this problem, for sure. I've personally picked up baggies and needles and disposed of them. There is a gorgeous new complex going up down the road – brand new. I'll be headed there when my lease is up here. If I could figure out a legal way to get out of my lease I would be out of here tomorrow.

Added April 24, 2017

(n)    **AfricanFlare90 - Prospective Resident**

Let me begin by disclosing that I am not a resident but I did tour this property last weekend. That said, there is no way in you know where I will ever be a resident. The apartment was ok, but I found the grounds to be very dirty. I actually stepped in a dog mess during my tour and was told "sadly people don't clean up." The real shock came when I asked about price and was told "before we talk about that I do have other properties." The leasing agent actually told me that in talking to me she felt I would fit in better at the property across the street, because the tenants there were more "my kind of people." I don't know whether she meant because I am African American, or what that comment was supposed to mean, but I quickly finished my visit and left. There should be laws against this sort of thing. I felt very looked down upon. Also, while I was sitting there a tenant came in to tell another agent his car was broken into and was told "nothing we can do. Call the police but good luck with them responding." This is most certainly not somewhere I would recommend anyone going.

Added April 25, 2017

(*Id.*)

## II.    STANDARD OF REVIEW

3

Generally, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)" of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26(d)(1). However, courts have broad discretion to manage the discovery process, and can accelerate or otherwise alter the timing and sequence of discovery. *See id.*; *see also* Fed. R. Civ. P. 26(d) advisory committee's note to 1993 amendment ("Discovery can begin earlier if authorized . . . by local rule, order, or stipulation. This will be appropriate in some cases, such as those involving requests for a preliminary injunction or motions challenging personal jurisdiction.").

The Federal Rules of Civil Procedure offer little guidance as to when it is appropriate to authorize expedited discovery. Although the United States Court of Appeals for the Third Circuit has not adopted a standard for evaluating such requests, this Court has previously held that a "good cause" standard should apply—one requiring the party seeking discovery to demonstrate that its request is "reasonable" in light of the relevant circumstances. *See, e.g., Williams v. Ocwen Loan Servicing, LLC*, Civil Action No. 14-1096-LPS-CJB, 2015 WL 184024, at *2 (D. Del. Jan. 13, 2015); *Vision Films, Inc. v. John Does 1-24*, Civil Action No. 12-1746-LPS-SRF, 2013 WL 1163988, at *3 (D. Del. Mar. 20, 2013); *Kone Corp. v. ThyssenKrupp USA, Inc.*, Civ. Action No. 11-465-LPS-CJB, 2011 WL 4478477, at *4-6 (D. Del. Sept. 26, 2011). Under the reasonableness standard "the court must weigh the need for discovery at an early juncture in the litigation against the breadth of the discovery requests and the prejudice to the responding party, by considering such factors as (1) the timing and context of the discovery requests [ ] . . . ; (2) the scope and purpose of those requests; and (3) the nature of the burden to the respondent." *Vision Films, Inc.*, 2013 WL 1163988, at *3 (quoting *Kone Corp.*, 2011 WL

4

4478477, at *4) (alterations in original). Of course, an assessment of these factors (going to issues like the "context . . . of the requests" or the "scope" or "purpose" of those requests) will require different types of analyses, depending on the particular kind of case at issue and the particular type of expedited discovery sought.

In cases like this one—where expedited discovery is sought in order to identify unknown or anonymous John Doe defendants—this Court and other courts have examined whether that discovery should be permitted (and/or whether "good cause" exists) by first asking whether the plaintiff has established a *prima facie* case for each essential element of the claim(s) in question. *See Getaway.com LLC v. John Does 1-26*, Civ. No. 15-531-SLR, 2015 WL 4596413, at *2 (D. Del. July 30, 2015); *Vision Films, Inc.*, 2013 WL 1163988, at *3-4; *see also Malibu Media LLC v. Doe*, Civil No. 1:15-cv-1129, 2015 WL 3795948, at *3 (M.D. Pa. June 18, 2015); *Assef v. Does 1-10*, Case No. 15-cv-01960-MEJ, 2015 WL 3430241, at *3 (N.D. Cal. May 28, 2015); *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012). This makes good sense, as in such a case—especially one where no adversary has yet appeared to challenge a plaintiff's complaint—a court would want to have some basic assurance that a viable claim exists in the first place, before it allowed discovery to proceed forward on that claim. If the plaintiff has made this *prima facie* showing, then courts have also inquired about whether the plaintiff has demonstrated: (1) that it has no other way to identify the alleged wrongdoers, aside from obtaining the discovery at issue; or (2) that expedited discovery is necessary because evidence identifying the defendants may be otherwise destroyed (e.g., as a result of routine deletion by third party ISPs). *See Vision Films, Inc.*, 2013 WL 1163988, at *3-4; *see also Malibu Media LLC*, 2015 WL 3795948, at *3; *Digital Sin, Inc.*, 279 F.R.D. at 241-42. If the plaintiff has been

5

able to make these showings, good cause has been found to exist in these cases, although courts will still assess whether other protections should be imposed to protect defendants from misuse of their personal information. *See Getaway.com LLC*, 2015 WL 4596413, at *3 & n.1 (directing plaintiff to provide notice on websites, where discovery was being sought as to the identity of online commenters who had posted on those websites, such that the notice would be posted prior to issuance of the subpoenas); *Vision Films, Inc.*, 2013 WL 1163988, at *4-5 (providing, *inter alia*, that the subpoenaed ISPs could not turn over any contact information for the Doe defendants to plaintiff prior to the expiration of a 60-day time period, starting from the date on which the ISPs provided the Doe defendant at issue with a copy of the subpoena and a copy of the Court's order); *see also Malibu Media LLC*, 2015 WL 3795948, at *3; *Digital Sin, Inc.*, 279 F.R.D. at 241-43 (issuing a protective order that required all information pertaining to the Doe defendants that was turned over to plaintiff was to "be treated as confidential for a limited duration").

## III.   DISCUSSION

### A.   Has Plaintiff Has Submitted Evidence Establishing a *Prima Facie* Case Regarding Its Lanham Act Claims?

The Court begins by assessing Plaintiff's request in light of its claims brought pursuant to Section 43(a) of the Lanham Act (Plaintiff's "First Claim for Relief" and "Second Claim for Relief[,]" respectively).  (D.I. 1 at ¶¶ 18-31)  It is the presence of those claims that is said to give rise to federal subject matter jurisdiction in this case, pursuant to the Complaint.  (*Id.* at ¶ 4)

Section 43(a) of the Lanham Act provides that:

> (1) Any person who, on or in connection with any goods or
> services, or any container for goods, uses in commerce any word,

6

term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). This portion of the Lanham Act, then, "provid[es] two bases of liability: (1) false representations concerning the origin, association, or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress, or other device ('false association'), and (2) false representations in advertising concerning the qualities of goods or services ('false advertising')." *Serbin v. Ziebart Int'l. Corp., Inc.*, 11 F.3d 1163, 1173 (3d Cir. 1993).

Nothing in Plaintiff's Complaint suggests that the anonymous online posters created confusion regarding the affiliation or association of Plaintiff's trademark with another mark, which would be required to maintain a "false association" Lanham Act claim. And while Plaintiff refers to its Lanham Act claims as claims for "Unfair Competition" and "Commercial Defamation" respectively, (D.I. 1 at 11, 12), it is clear from the allegations that the claims are both really false advertising claims under the Act. Indeed, both of the claims largely track Section 43(a)'s language providing for just that type of cause of action: "Doe's actions

7

misrepresent the nature, characteristics, and/or qualities of [Plaintiff's] goods, services, or

commercial activities[.]"  (D.I. 1 at ¶¶ 20, 25); *see also* 15 U.S.C. § 1125(a)(1)(B).

To establish a *prima facie* claim of false advertising under the Lanham Act, Plaintiff must

sufficiently allege:  (1) that the defendant has made false or misleading statements as to the

defendant's own product or another's; (2) that there is actual deception or at least a tendency to

deceive a substantial portion of the intended audience; (3) that the deception is material in that it

is likely to influence purchasing decisions; (4) that the advertised goods traveled in interstate

commerce; and (5) that there is a likelihood of injury to the plaintiff in terms of declining sales,

loss of good will, etc. *Johnson & Johnson–Merck Consumer Pharm. Co. v. Rhone–Poulenc

Rorer Pharm., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994) (citing *U.S. Healthcare, Inc. v. Blue Cross

of Greater Phila.*, 898 F.2d 914, 922-23 (3d Cir. 1990)); *Deston Therapeutics LLC v. Trigen

Labs. Inc.*, 723 F. Supp. 2d 665, 673 (D. Del. 2010); *Accenture Glob. Servs. GmbH v. Guidewire

Software Inc.*, 581 F. Supp. 2d 654, 666 (D. Del. 2008).  As the statute's text and the above-

referenced factors indicate, in order to make out such a claim, a plaintiff must, *inter alia*, point to

the defendant's use of "commercial advertising or promotion" (that in turn contains the requisite

false or misleading statements).  *See Deston Therapeutics LLC*, 723 F. Supp. 2d at 674; *Enzo

Life Scis., Inc. v. Digene Corp.*, 295 F. Supp. 2d 424, 428 (D. Del. 2003); *Accenture*, 581 F.

Supp. 2d at 666; *see also Guardian Life Ins. Co. of Am. v. Am. Guardian Life Assurance Co.*, No.

CIV. A. 95–3997, 1995 WL 723186, at *3 (E.D. Pa. Nov. 14, 1995).

In determining whether representations constitute "commercial advertising or promotion"

under the meaning of the Lanham Act, this Court has used the "*Gordon & Breach* test," under

which representations will past muster if they "consist of:  (1) commercial speech; (2) by a

8

defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing

consumers to buy defendant's goods or services; (4) that is disseminated sufficiently to the

relevant purchasing public to constitute 'advertising' or 'promotion' within that industry."

*Guardian Life*, 1995 WL 723186, at *3 (citing *Gordon & Breach Sci. Publishers S.A. v. Am. Inst.*

*of Physics*, 859 F. Supp. 1521, 1535-36 (S.D.N.Y. 1994)); *see also Accenture*, 581 F. Supp. 2d at

667 (citing *Gordon & Breach*, 859 F. Supp. at 1535-36); *Enzo Life Scis., Inc.*, 295 F. Supp. 2d at

428 (citing *Guardian Life*, 1995 WL 723186, at *3)); *In re Warfarin Sodium Antitrust Litig.*, No.

MDL 98-1232-SLR, 1998 WL 883469, at.*13 (D. Del. Dec. 7, 1998) (citing *Gordon & Breach*,

859 F. Supp. at 1535-36), *rev'd on other grounds*, 214 F.3d 395 (3d Cir. 2000).   And with regard

to the requirement that the representations amount to "commercial speech," this Court has noted

that the speech "must 'propos[e] a commercial transaction.'" *Accenture*, 581 F. Supp. 2d at 667

(alteration in original) (quoting *United States v. Edge Broad Co.*, 509 U.S. 418, 426 (1993)); *see*

*also In re Warfarin Sodium Antitrust Litig.*, 1998 WL 883469, at *13 (same); *cf. Goodman v.*

*Does*, No. 4:13–CV–139–F, 2014 WL 1310310, at *4 (E.D.N.C. Mar. 28, 2014) (noting that

commercial speech must do "no more than propose a commercial transaction" or be "related

solely to the economic interests of the speaker and its audience") (internal quotation marks and

citation omitted).   The Lanham Act has never been applied to "'stifle criticism of the goods or

services of another by one, such as a consumer advocate, who is not engaged in marketing or

promoting a competitive product or service.'" *Goodman*, 2014 WL 1310310, at *5 (quoting

*Wojnarowicz v. Am. Family Ass'n*, 745 F. Supp. 130, 141-42 (S.D.N.Y. 1990)).

     Here, Plaintiff has failed to sufficiently allege that the anonymous reviews posted on

ApartmentRatings.com constitute "commercial speech," or that the speech comes from a

Defendant in "commercial competition" with Plaintiff,  or that the speech was made for the

purpose of "influencing consumers to buy [a D]efendant's goods or services."  Seven of the 14

online posts cited in Plaintiff's Complaint are listed as being written by a "Resident" or

"Prospective Resident[,]" and all 14 postings include content that either directly states or very

strongly implies that the poster currently lives in, has previously lived in, or was thinking of

moving to St. Andrews.  (D.I. 1 at ¶ 16)[1]  Not a single online post in the Complaint is explicitly

identified with a competitor in the market, as seven of the 14 posters identify as "anonymous"

and the other six have usernames that are not associated with any business entity.  (*Id.*)  Nor are

there any facts pleaded in the Complaint that otherwise allege or explain why such posts could be

said to meet the above-referenced requirements.  Thus, the nature of the content at hand falls

outside the scope of a Lanham Act false advertising claim.  *See Goodman*, 2014 WL 1310310, at

*6 (finding, as to a Lanham Act false advertising claim, that the plaintiff insufficiently pleaded

that the statements at issue involved "commercial speech," where "the complaint contains

numerous quotations from anonymous posters on the website [in question], and leaves it to the

court to draw inferences regarding whether these postings come from [plaintiff's] competitors"

and where "the tenor of each of these comments reflect consumer reviews by parties with no

commercial interest in the postings themselves"); *see also Nemet Chevrolet, Ltd. v.

Consumeraffairs.com, Inc.*, 564 F. Supp. 2d 544, 547, 554-55 (E.D. Va. 2008) (finding that

consumer reviews posted on a defendant's website did not constitute commercial advertising or

---

[1]      While "anonymous" online post "(b)" does mention other apartment complexes
(i.e., "There is tons of new stuff around that is cheaper.  Rock wood, Emblem, check these out."),
on its face, the post states that it is from a person who pays "rent" to St. Andrews and who is
looking to move "out of here this year."  (D.I. 1 at ¶ 16)

promotion for purposes of making out a false advertising claim under the Lanham Act).

For this reason, Plaintiff has not established a *prima facie* case of false advertising under Section 43(a) of the Lanham Act. And in the absence of understanding how Lanham Act claims could go forward here, the Court cannot find that there is "good cause" to grant the Motion, to the extent it is premised on such claims.

**B.     If Plaintiff's Lanham Act Claims Are Not Sufficient to Permit Grant of the Motion, How Could There Be Subject Matter Jurisdiction Over Plaintiff's Complaint (and thus, How Could the Presence of Plaintiff's Additional State Law Claims Somehow Permit the Grant of the Motion)?**

The Court has above explained why it cannot find that a *prima facie* case has been alleged with regard to Plaintiff's Lanham Act claims. This creates jurisdictional problems for Plaintiff, because it was relying on such claims to support subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (acts of Congress related to patents, copyrights, and trademarks), and, presumably as the basis for its assertion that the Court should exercise supplemental jurisdiction over the remaining state law claims, pursuant to 28 U.S.C. § 1367. (D.I. 1 at ¶ 4) This, then, raises the question as to whether subject matter jurisdiction even exists in this case.

A federal court has a continuing obligation to ensure that it has subject matter jurisdiction over a cause of action and can raise the issue *sua sponte*. *See Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010); *Getaway.com LLC*, 2015 WL 4596413, at *1; *Gunzl v. Stewart*, Civ. No. 15-1160-SLR, 2016 WL 1381767, at *5 (D. Del. April 6, 2016) (citing *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76-77 (3d Cir. 2003)). The burden of establishing federal jurisdiction is on the party that seeks to invoke that jurisdiction. *Johnsrud v. Carter*, 620

11

F.2d 29, 33 (3d Cir. 1980) (citing *McNutt v. General Motors Corp.*, 298 U.S. 178, 182-83

(1936)).  If the court determines at any time that subject matter jurisdiction is lacking, it must

dismiss the action.  Fed. R. Civ. P. 12(h)(3).

If the Lanham Act claims are not viable, Plaintiff would presumably need to demonstrate

that diversity jurisdiction exists here under 28 U.S.C. § 1332 in order to be able to premise its

request for expedited discovery on its state law causes of action.  In a diversity action, a district

court has subject matter jurisdiction over state law claims if there is complete diversity of

citizenship between the parties and the amount in controversy exceeds $75,000.  28 U.S.C. §

1332(a); *see Werwinski v. Ford Motor Co.*, 286 F.3d 661, 666 (3d Cir. 2002).  Complete

diversity of citizenship means that each defendant must be a citizen of a different state from that

of each plaintiff.  *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978); *Braun

v. Gonzales*, 557 F. App'x 176, 179 (3d Cir. 2014) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526

U.S. 574, 584 (1999)).

That leads to a problem in a case such as this one, where the Plaintiff does not even know

who the Defendants are, let alone what state they reside in.  Indeed, the entire point of Plaintiff's

request for expedited discovery is so that Plaintiff can identify those Defendants and, *inter alia*,

ascertain this information.

While federal courts are apparently divided on the question of whether the existence of

unidentified or "Doe" defendants defeats diversity jurisdiction in a circumstance like this, *see

Getaway.com LLC*, 2015 WL 4596413, at *2 (citing cases), the Third Circuit has spoken fairly

clearly on this issue.  In *Mortellite v. Novartis Crop Protection, Inc.*, 460 F.3d 483 (3d Cir.

2006), the Third Circuit stated that where there are no allegations as to their citizenship, "John

12

Doe parties destroy diversity jurisdiction if their citizenship cannot truthfully be alleged."

*Mortellite*, 460 F.3d at 494 (citing *Kiser v. Gen. Elec. Corp.*, 831 F.2d 423, 426 n.6 (3d Cir.

1987)); *see also Kabbaj v. Am. Sch. of Tangier*, Civil Action No. 10-431-RGA, 2015 WL

6757525, at *2 (D. Del. Nov. 5, 2015); *Kabbaj v. John Does 1-108*, Civil Action No. 14-1484-

RGA, 2015 WL 4747221, at *3 (D. Del. Aug. 11, 2015) (noting, in a case where the only

defendants were John Doe defendants, that the Court was prepared to dismiss the case for lack of

subject matter jurisdiction, since the case was premised on diversity jurisdiction but there is "no

allegation of citizenship" as to the unknown defendants).[2] The *Mortellite* Court explained that in

cases where the named plaintiffs can obtain complete relief without the presence of John Doe

parties, such that those John Doe parties are dispensable parties, then the John Doe parties could

be dismissed and the case be allowed to proceed. *Mortellite*, 460 F.3d at 494. Here, though, the

*only* defendants in the case are John Doe Defendants, and if they were dismissed, there would be

no case.

---

[2]     The Court acknowledges that in at least one case like this one, in which plaintiffs
brought a case against "Doe" defendants that was premised on diversity jurisdiction, a District
Judge of this Court permitted plaintiffs to obtain expedited discovery regarding the identity of the
defendants, after assuring itself that plaintiffs had set out a *prima facie* state law defamation
claim. *Getaway.com LLC*, 2015 WL 4596413, at *2. However, in that case—*Getaway.com LLC
v. John Does 1-26*, Civ. No. 15-531-SLR, 2015 WL 4596413 (D. Del. July 30, 2015)—the
District Court did not cite to the Third Circuit's decision in *Mortellite*. Moreover, the
*Getaway.com* Court referenced the particular "circumstances of th[e] case" in making its decision
to permit expedited discovery, noting that "the allegedly defamatory comments did not concern a
local matter and could have been posted by anyone in the world connected to the internet[.]" *Id.*
Here, in contrast, the allegations in the Complaint do concern a "local matter"—the condition of
an apartment complex located in this District. And on the face of Complaint, the John Doe
Defendants who are said to have posted the comments at issue appear to be persons who live in
(or at least lived in the past, or were seeking to live in) that same Delaware-based apartment
complex. Thus, even if one were guessing at whether diversity jurisdiction is likely to exist here,
based on what facts are alleged, one would have to suppose it would not.

13

As it is not clear that diversity jurisdiction exists here, based on the Complaint's allegations, the Court does not believe it would be proper to premise the grant of the Motion on state law claims included by Plaintiff in the Complaint.

## IV.    CONCLUSION

The Court is not prepared to grant a motion for expedited discovery in a case where:  (1) the Plaintiff has not made out a *prima facie* case as to those federal statutory claims that supposedly give rise to federal subject matter jurisdiction; and (2) it does not appear that subject matter jurisdiction would otherwise exist in the absence of those federal statutory claims.  For the reasons set forth above, IT IS HEREBY ORDERED that Plaintiff's Motion be DENIED.  The Court notes that Plaintiff has the ability to amend its complaint once as a matter of course. Fed. R. Civ. P. 15(a)(1).  Perhaps if it were to do so, Plaintiff could plead facts that better articulate why it has a *prima facie* claim under the Lanham Act or why this Court otherwise should grant expedited discovery.

Dated: September 29, 2017

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

14